## Codell Const. Co. v. Miller et al.

May 13, 1947.

Watt M. Prichard, Judge.

C. F. See, Jr. for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

On August 18, 1944, the appellant entered into a contract with the Department of Highways of Kentucky for the reconstruction of approximately six miles of U. S. Highway No. 23 in Lawrence County, under plans and specifications provided therefor by the Department, and under the supervision and direction of the Department's engineers. The plans called for relocation of the highway through the lands of Harkless Slone, and required a cut approximately seventy-five feet deep through a point in his property. Adjacent to the right of way at this point there is located an old graveyard, designated in the record as the Miller graveyard. The graves of Robert Miller and Susanne Miller, grandparents of the original plaintiffs in this action, were located at the end of the graveyard nearest the right of way obtained by the Highway Department.

Due to a loose shale formation the dynamite blasts for the cut left a large boulder high up on the bank of the cut in a loose position, so that it created a menace to the safety of traffic on the new highway. The engin-

eers for the Highway Department, and the superintendent for appellant, agreed that this boulder should be removed, and the employees of appellant, under instructions from the engineers for the Highway Department, drilled holes back of the rock for the purpose of blasting it loose with dynamite.

The evidence is conflicting as to how near these holes were to the right of way line, the evidence for the plaintiffs being to the effect that they were about eighteen inches from the line, and the evidence for the defendant showing that they were from two to three feet inside the right of way. These blasts removed the boulder but also caused a cave-in or slide which extended into the Slone property and destroyed a portion of the graves of Robert and Susanne Miller.

This action was originally instituted by several grandchildren of Robert and Susanne Miller who, in their first petition, alleged that they were all the heirs at law of their grandparents. For their cause of action they stated that appellant "did unlawfully, wrongfully, wantonly and recklessly desecrate the graves * * * without any right or title so to do, and was unlawfully and highhandedly done," causing them mental pain and anguish to their damage in the sum of $10,000.

Several amended petitions were filed and appellant filed its answer and cross petition against Lawrence County, but the cross petition was abandoned because the county did not provide the right of way for reconstruction of the highway, this duty being on the Highway Department. Paragraph two of the answer set up appellant's contract with the Highway Department and alleged that it had carefully carried out such contract, conforming to all its plans and specifications, and that all work thereunder was done in a careful and correct manner. Paragraph three of the answer pleaded contributory negligence.

The fourth amended petition filed by plaintiffs stated: "There are a number of heirs of Robert and Susanne Miller who are permitted under the law to share in whatever amount is gained in this action, and that it is impracticable to bring them into court as parties," and asked leave of court to prosecute the action for the use and benefit of all the heirs at law of Robert and Susanne

Miller "as the common interest in the outcome of this suit." A demurrer to this last amendment was overruled, and the trial court authorized the plaintiffs to prosecute their cause as a class action on behalf of all the heirs at law of the deceased. The jury returned a verdict for plaintiffs in the sum of $4,500. Judgment for that amount was entered, from which this appeal is taken.

Appellant sets up five grounds for reversal. They are:

1. The case may not be prosecuted as a class action.
2. It was entitled to a directed verdict.
3. The instructions were erroneous.
4. Incompetent evidence was admitted.
5. The damages are excessive.

1. Section 110 of the Civil Code of Practice requires the caption of a pleading to state the names of the parties, and further provides: "If there be several parties on either side, a statement of the name of the plaintiff, or defendant, first named in the petition, followed by the phrase, '&c.,' shall suffice, except in petitions, cross-petitions and answers which make new parties to a set-off or counter-claim."

Appellant argues that by reason of this quoted provision of the Civil Code of Practice the failure of plaintiffs to name all other interested parties in their last amended petition makes it clear that plaintiffs elected to proceed as representatives of a class under Section 25 of the Civil Code of Practice, and claims that the cause is not of such nature as it may become the subject of a class action. This contention is based on the claim that the named plaintiffs are not able to fairly represent the unknown heirs and show the nature and extent of their mental pain and anguish (which is the measure of damages in this type of action), and that in the absence of a specific finding of a jury as to the anguish of each, the judgment is erroneous.

Appellant further says that even if such a suit may be properly prosecuted as a class action, the petition is inadequate. The material allegations of the petition, and the last amended petition, are quoted above.

After examining the original and four amended petitions, we have come to the conclusion that while such pleadings are poorly drawn, and do not strictly follow the language of Section 25 of the Civil Code of Practice, they do in substance, when taken together, contain allegations sufficient to support a class action. We think also that in a situation such as this, where some of the heirs of the deceased are unknown, a class action is proper. In North East Coal Co. v. Pickelsimer, 253 Ky. 11, 68 S. W. 2d 760, 763, which was a suit for interference with graves, we said: "It is universally. agreed that the right of action of the 'next of kin' is a family right, and daughters and sons or brothers and sisters may maintain one action and not a separate action by each one of them." This is authority that one action must be maintained for damage to all the heirs at law, and where some of the heirs are unknown at the time the action is instituted, and are so numerous that it is impracticable to bring all of them before the court within a reasonable time, one or more of such heirs may sue for the benefit of all. Section 25 Civil Code of Practice. The fact that this type of action is a family right, and only one action may be maintained for the damages sustained, is sufficient to distinguish it from such cases as Union Light, Heat & Power Co. v. Mulligan, 177 Ky. 662, 197 S. W. 1081; Garfein v. Stiglitz, 260 Ky. 430, 86 S. W. 2d 155; Commonwealth, for Use and Benefit of Bouteiller v. Ray, 275 Ky. 758, 122 S. W. 2d 750, and see 39 Am. Jur., Parties, Section 44, page 917.

2. As indicated above, the petition bases this cause of action on the allegation that the construction company "did unlawfully, wrongfully, wantonly and recklessly desecrate the graves." In Louisville Cemetery Ass'n v. Downs, 241 Ky. 773, 45 S. W. 2d 5, 6, it is said: "A recovery may be had by the next of kin or the surviving spouse for an unwarranted interference with the grave of a deceased, or for the inflicting of injury to a corpse, if either be done (a) maliciously, (b) or by gross negligence, (c) or wantonly, i. e., with a reckless disregard of the rights of another * * *." As claimed by appellant, the petition fails to allege that the interference with the graves was done either maliciously or by gross negligence, but we think the allegations are sufficient to state a cause of action under (c) of the quotation from

the above cited case, that is, that the acts were wanton and committed with a reckless disregard of the rights of the next of kin of the deceased. There remains the question of whether there is sufficient evidence to show that the acts of the appellant were wanton or committed recklessly. A brief reference to the evidence is necessary.

There is filed with the record a map, or blueprint, showing the right of way at the point where it passed the graveyard. Just before reaching the graveyard the right of way is ninety feet wide, and at the place where the graveyard is located there is an inset to the extent that the right of way at this point is only forty feet wide. Immediately after it passes this particular place the right of way is widened to sixty feet. The map does not show why the right of way is narrowed at this particular place, nor does the record show clearly why the right of way was obtained in this manner. However, it is only reasonable to assume that the width of the right of way was reduced at this particular place in order to avoid the graveyard. There is some evidence to show that the two graves in question were marked by common field stones, but the graveyard had been neglected, and even plaintiffs admitted that for many years no effort had been made to care for the cemetery, and it had been allowed to grow up in shrubs, weeds, bushes and similar vegetation. Furthermore, all plaintiffs who testified admitted they had not visited the graves since the burial of an aunt some forty or more years ago.

In order to determine whether there was sufficient evidence to authorize the court to submit to the jury the question of whether the destruction of the graves was done wantonly or in reckless disregard of the rights of the next of kin, knowledge that a graveyard was located at this particular place must be brought to the appellant construction company. Without detailing the testimony, it is sufficient to say that the witnesses for the plaintiffs testify to facts which clearly show notice to the construction company that a graveyard was located at this point next to the right of way.

Jim Tackett was the engineer for the Highway Department and supervised the construction work by appellant. He admits in his testimony that he was told that some of the Miller family were buried in the graveyard; that he went to see Mr. Robert Miller, one of the

plaintiffs, brought him down to the graveyard, and that Mr. Miller showed him where his people were buried. He further states that before any digging was done in the cut, he knew, or believed, there was a graveyard at this place, and that he and some of the employees of the Codell Construction Company went up the hill above the cut to find out if there was a graveyard there.

A. H. Brantley, superintendent for the construction company, and in charge of the construction work, says that he executed the contract with the Highway Department under the orders and directions of Mr. Tackett and his assistant, Mr. Hopkins, engineers for the Department. He admits in his testimony that he was present when Mr. Robert Miller was brought to the graveyard for the purpose of pointing out the location of the graves, and says that before the cut was made he saw two mounds above the place where his men were working that would indicate the presence of graves at that point. This testimony is substantiated by other evidence, and we think it is sufficient to show that the appellant construction company knew that the Miller graveyard was located immediately adjacent to the right of way. Proceeding on the assumption that the construction company was on notice that the graveyard was at this particular location, we also find that the evidence discloses that both the highway engineers and the employees and agents of the construction company knew that the soil at this point consisted of a loose shale formation. This became known to them after the dynamite blast which left the large boulder hanging from the cut. Whether they should have anticipated that the second blast, for the purpose of removing the large stone, would cause the bank of the cut to slide or cave in beyond the line of the right of way and endanger or destroy the graves adjacent thereto is, we think, a question for the jury. As a matter of fact, one witness testified that when he saw the last dynamite shots being loaded by an employee of the construction company, he advised the employee that if the shots were made at that place it would cause a portion of the graveyard to break loose and slide down the bank of the cut.

Appellant contends that its evidence shows its good faith in following out the plans and specifications of its contract with the Highway Department, and negatives

the idea of any wanton or reckless acts. It relies on the case of Hunt-Forbes Construction Co. v. Robinson, 227 Ky. 138, 12 S. W. 2d 303, in which we held, under a different set of facts, that a contractor in the absence of negligence is relieved of liability for injuries resulting from the construction of a highway where the work is done in strict conformity with plans and specifications of the Highway Department. This same defense was presented to us in Johnson v. Kentucky-Virginia Stone Co., 286 Ky. 1, 149 S. W. 2d 496, wherein it was held that the rule laid down in the Hunt-Forbes case does not apply to this type of action, saying that the rule does not go so far as to hold that a contractor can knowingly destroy or injure property which was not included in the right of way for highway construction.

We think the evidence on the whole clearly shows that the construction company had actual notice that the right of way ran along the edge of the Miller graveyard and that shooting the dynamite within not over three feet from the cemetery, when knowing that the formation of the soil was loose shale, might well have been thought by the jury to be a reckless disregard of the graves, and thus the rights of the next of kin of the deceased who were buried there. The representatives of the construction company and of the Highway Department were experienced in this type of construction work and might have anticipated the ultimate result.

3. The instructions given by the court are erroneous. Without copying the instructions here it is sufficient to say that they are erroneous because, in effect, the jury was told that if the construction company was guilty of simple negligence, and that the destruction of the graves was a result of such negligence, the defendant was liable for the damage sustained. Under the rule in this jurisdiction, as hereinbefore pointed out, the construction company is liable only where the destruction of the graves was done either maliciously, by gross negligence, or wantonly, with a reckless disregard of the rights of others. For this reason both instruction No. 1 and instruction No. 2 were erroneous and prejudicial, and the court should have instructed the jury that the construction company is liable only if its acts, resulting in the interference and destruction of the graves, were done wantonly with a reckless disregard of the rights of

the next of kin of the deceased who were buried there. This instruction, we think, is authorized by the pleadings and proof, and on the next trial of the case, if the evidence is substantially the same, such instruction should be given. See North East Coal Co. v. Pickelsimer, supra; North East Coal Co. v. De Long, 254 Ky. 22, 70 S. W. 2d 972; Johnson v. Kentucky-Virginia Stone Co., supra, and Louisville Cemetery Ass'n v. Downs, supra.

Instructions A and B, offered by appellant, were properly rejected by the court. Instruction A is based on paragraph 2 of the answer hereinabove referred to. This paragaph of the answer does not set out a valid defense. North East Coal Co. v. Pickelsimer, supra. Instruction B is based on the plea of contributory negligence. As we view the evidence it was sufficient to show knowledge on the part of the construction company that the graveyard was immediately adjacent to the right of way, and this instruction was not authorized.

4. It is true that some of the witnesses, while testifying about the graveyard, referred on several occasions to graves other than those of Robert and Susanne Miller. We said in North East Coal Co. v. Pickelsimer, supra, that evidence concerning graves other than those involved is not only immaterial but inadmissible, and the evidence complained of by appellant was immaterial and inadmissible, but we have concluded that it was in no way prejudicial. However, on the next trial the evidence should be limited to the two graves which are involved.

5. The judgment for $4,500 is obviously excessive. The plaintiffs who testified admitted they had not visited the graveyard or the graves of their ancestors for many years, and had neglected the cemetery and allowed it to grow up in shrubs, weeds and bushes. The evidence seems clear that none of them remembered their grandparents. There is no evidence whatever to show any close family relationship between any of the plaintiffs and Robert and Susanne Miller, and there is no testimony of any facts which would indicate mental anguish on the part of any of them. The remoteness of the kinship of the plaintiffs in an action of this type must necessarily be taken into consideration in determining wheth-

er a judgment for mental pain and anguish is excessive. The closest relationship shown by this record is that of the grandchildren who, as stated, admit that they never knew their grandparents and did not remember them. Apparently others who have an interest in any amount recovered as next of kin of the deceased include some great grandchildren, and the more remote the kinship the less the damage on account of mental anguish. As pointed out in North East Coal Co. v. Pickelsimer, supra, mental suffering is not an element of damage for an indignity or wrong which is unaccompanied by physical injury, but that test is met here because the graves involved were partly destroyed. This fact authorized recovery for mental anguish, but the remoteness of the kinship of the plaintiffs, coupled with the fact that none of them knew or remembered the deceased, is sufficient to create a first impression that a judgment for $4,500 is excessive.

For the reasons given herein the judgment must be and it is reversed for proceedings consistent herewith.