# Card Creek Coal Co. v. Cline et al.

June 20, 1947.

Rehearing denied October 28, 1947.

R. Monroe Fields, Judge.

P. B. Stratton for appellant.

Francis M. Burke, O. T. Hinton, Hinton & Rice and Sidney Trivette for appellees.

Opinion of the Court by Judge Dawson—Affirming.

This appeal is prosecuted to reverse a judgment dismissing appellant's petition, by which it sought to cancel a deed dated November 6, 1931, and to recover damages from appellees for trespass.

The property involved consists of the minerals un-

derlying nineteen tracts of land which were purchased in 1891 by Edward Rice and J. M. Pursifull, who organized the Big Sandy Coal and Mineral Corporation and conveyed these mineral rights to it. Pursifull died in 1893. T. F. Gibson was appointed administrator of his estate and later became president of the corporation. Some time prior to 1914 Rice died and his wife Mary inherited his interest in the corporation. She died in 1914, and John Ritchie qualified as her administrator. After her death the appellant corporation was formed by Gibson, Ritchie and one William Low, for the purpose of taking over the properties of the Big Sandy Coal and Mineral Corporation.

On April 16, 1919 directors and officers of the new corporation were elected. Apparently no further corporate business was transacted until February 10, 1943, except taxes were paid on the corporation's properties until 1927.

Ritchie died in 1927, and most of the present stockholders of the corporation are unknown.

In 1928 the state and county taxes of the corporate property became delinquent, and in 1929 the property was sold and bid in at the tax sale by the state and county. In 1931 the state, through its then auditor, Clell Coleman, advertised the property for sale, and sold and deeded it to J. S. Cline, Sr. It is this deed that is attacked in this action.

In view of the conclusion we have reached it will not be necessary to discuss the irregularities of the tax deed other than to say that because of these irregularities we think it was ineffective to pass title.

On October 3, 1940, Cline leased a portion of the property to one Robert Johnson, but the record does not show that Johnson ever took possession under this lease. Cline died prior to 1941, and his son, J. S. Cline, Jr., was appointed as his executor.

On November 8, 1941, J. S. Cline, Jr., one of the appellees herein, executed a new lease on a portion of this property to Roland Rowe, and on November 19, 1942, a new lease was executed to Rowe which covered practically all of the valuable portion of the property. Under these leases Rowe expended about $30,000 in de-

veloping the property for coal mining. In the meantime a railroad and highway had been built on or close to the leased property and the value of the property, as the chancellor found, was "enhanced tenfold."

On February 10, 1943, an effort was made to revive the appellant corporation, and a stockholders' meeting was held, at which were present Mr. Gibson, a Mr. Rector who had recently become the owner of three shares of stock, and Mr. Stratton, who was also issued three shares of stock. Following that meeting, and on February 18, 1943, this action was instituted. By proper pleadings the appellees attacked the corporate existence of the appellant and pleaded laches as a defense.

One of the grounds urged by appellant for reversal is that the tax deed and the leases by the Clines to Rowe are champertous under KRS 381.430. This statute is applicable only as between the owner of the surface and the owner of the minerals, or those claiming under them, and does not apply where adverse parties both claim the minerals without any question of possession of the surface. Moreover, appellants did not plead or rely upon this statute below and have presented this contention for the first time on this appeal. We have concluded that there is no merit in this point.

We think the whole case must turn on the question of whether appellant is estopped by laches to maintain this action. An action to enforce an equitable claim may be barred by delay for an unreasonable length of time. It has been said that reasonable diligence is essential to call into action the powers of a court of equity and that equity has always refused aid to stale demands where the party has slept upon his rights and acquiesced for a great length of time. The basis of the doctrine of laches is that a court of equity will withhold relief if it would be inequitable to grant the demand. In its legal significance laches is not merely delay, but delay that results in injury or a disadvantage to the adverse party. What is unreasonable delay always depends on the facts in the particular case. See Culton v. Asher, 149 Ky. 659, 149 S. W. 946, and Denison v. McCann, 303 Ky. 195, 197 S. W. 2d 248.

In 19 Am. Jur., Equity, section 498, page 343, it is said that a suit is barred on the ground of laches where

the following facts are disclosed: "(1) Conduct on the part of the defendant, or of one under whom he claims, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy, as, for example, an invasion by the defendant of the complainant's right, such as the right to the possession of property; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred."

It is apparent from the record that subsequent to the tax deed in 1929, and until shortly before the filing of this suit in 1943, the officers and stockholders of the appellant corporation felt that the property was of insufficient value to warrant paying the corporation license tax or the tax on the mineral rights. The tax deeds and the leases were duly recorded and no objection was ever offered to the leases or the operations on the property by the lessee.

On the other hand, the Clines paid all the taxes on the mineral rights and their lessee Rowe expended some $30,000 for mining equipment and machinery. It also appears that some time in 1942 Gibson, and perhaps Stratton, went to the property and inspected it, and the operations on it. Rowe testified that Gibson represented himself as being interested in mining and questioned him concerning the methods of operation and the quality of coal obtained.

Reviewing the evidence we find: (1) That the appellant waited fourteen years from the date of the original tax deed, and twelve years from the date of the tax deed to Cline to assert his rights; (2) that there is substantial evidence to support the chancellor's findings that appellant, through its agents, had knowledge of the tax deeds and of the leases; (3) that the appellees had no notice that the corporation intended to assert its rights; and (4) that the value of the property has been greatly enhanced, particularly through the expenditures

of the lessee, and to permit the prosecution of appellant's claim, under these circumstances and at this late date, would seriously prejudice the rights of appellees. Thus the elements of laches as outlined above are met. See Barrowman Coal Corporation v. Kentland Coal & Coke Co., 302 Ky. 803, 196 S. W. 2d 428.

Wherefore, the judgment is affirmed.