Louise **FERGERSON**, Appellant,

v.

**UTILITIES ELKHORN COAL COMPANY,**
Appellee.

Court of Appeals of Kentucky.

Feb. 28, 1958.

Rehearing Denied June 13, 1958.

Jack T. Page, Charles E. Lowe, Pikeville, for appellant.

Hobson & Scott, Pikeville, for appellee.

MOREMEN, Chief Justice.

Appellant, Louise Fergerson, mother and next of kin of Jean and Otis Fergerson who died in early infancy, sought in the Pike Circuit Court to recover damages because of the desecration of the infants' graves by appellee, Utilities Elkhorn Coal Company. She also sought an injunction which would require appellee to remove slate and other mining refuse—which had been dumped on the graves—so that her right of visitation could be exercised.

The complaint, as amended, averred that her infant children had been buried in a public dedicated community cemetery near Esco on Shelby Creek in Pike County and charged that appellee, as an incident to its coal mining operation had, with gross negligence, wrongfully, maliciously and with such recklessness as to indicate a wanton disregard for her rights, caused slate, bone, shale and other mining refuse to be dumped upon the graves of her children so that she was unable to visit the burial site. She alleged that she had been caused great mental pain and suffering and requested punitive damages. A mandatory injunction requiring appellee to restore the graves to a normal and decent condition was requested.

After appellee pled various statutes of limitation and matters of laches and estoppel, it moved for a summary judgment, which was granted by the court.

The subject of a person's right to recover in cases of this nature was summarized by this court in Louisville Cemetery Association v. Downs, 241 Ky. 773, 45 S.W.2d 5, 6, where it was said:

"A recovery may be had by the next of kin or the surviving spouse for an unwarranted interference with the grave of a deceased, or for the infliction of an injury to a corpse, if either be done (a) maliciously, (b) or by gross negligence, (c) or wantonly, i. e., with a reckless disregard of the rights of another (Louisville & N. R. Co. v. Hull, 113 Ky. 561, 68 S.W. 433, 24 Ky.Law Rep. 375, 57 L.R.A. 771), (d) or for an unlawful or secret disinterment or displacement thereof (Ky. St. §§ 466 and 1335), or (e) an action of trespass quare clausum fregit may be maintained by the holder of the title, or the person in possession of, the lot on which a grave is located (Cooley on Torts 239, 240; 1st Blackstone's Commentaries 429; Hook v. Joyce, 94 Ky. 450, 22 S.W. 651, 15 Ky.Law Rep. 337, 21 L.R.A. 96), or (f) for the removal of a body from one grave to another by those in authority and control of the cemetery or burial ground, without notice, or an opportunity, to him who in law is entitled to be present, if he desires, before its removal (citing cases)."

However in North East Coal Company v. Pickelsimer, 253 Ky. 11, 68 S.W.2d 760, this court seems to have limited the authority of that case to the extent that n

would not permit recovery of compensatory damages for mental anguish in every case involving a corpse or a grave.

In the later case of Codell Construction Company v. Miller, 304 Ky. 708, 202 S.W. 2d 394, 172 A.L.R. 546, where a construction company might have anticipated damages to graves by the use of dynamite in the course of its construction work, the court held that the evidence was sufficient to show that the acts of the construction company were a reckless disregard of the plaintiffs' rights and entitled them to a recovery for mental anguish. See also: City of Hopkinsville v. Burchett, Ky., 254 S.W.2d 333.

It may be seen under item (e) in the Downs opinion above quoted that an action of trespass may also be maintained under certain conditions. That statement is supported by some authority. In Brunton v. Roberts, 265 Ky. 569, 97 S.W.2d 413, 415, 107 A.L.R. 1289, we said this:

"Ordinarily, the purchaser of a lot in a cemetery acquires only an easement or license to make interments therein exclusive of others. This right of sepulture is a property right, subject to reasonable rules and regulations governing the cemetery, and, of course, to be controlled by the state in the exercise of its police powers. When that right is violated, the owner is as certainly entitled to all the remedies which the law affords as if he owned a fee simple."

We have had difficulty dividing the cases into the groups which permit recovery for mental anguish for the wrong committed and those which permit recovery under the theory that trespass to land has been committed. It is difficult under the pleadings in this case to determine under which theory appellant seeks to recover.

The circuit court believed that the action was based on both theories because upon submission on motion for summary judgment, it was held that appellant knew of the condition in 1945, and since suit was not commenced until December 17, 1952, it was barred by the statute of limitations which ordinarily applies to actions to recover damages for trespass to realty. He held that insofar as appellant sought damages for injury to her feelings, the one-year statute applied, KRS 413.140, and summary judgment was entered for appellee.

 It is not apparent from the complaint which path appellant elected to follow, but it does contain a clear statement of its nature and under our rules the fact that a pleader does not specifically ask for the type of relief he wants does not always bar recovery. It was pointed out in Clay, CR 8.01, under note 4, that a complaint is not necessarily insufficient if the plaintiff fails to ask for proper relief, the question being whether his statement of claim shows him to be entitled to any relief the court may properly grant, and CR 54.03 provides: "Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." (This does not apply to default judgment.)

 So we are of opinion that we should treat appellant's complaint as did the trial court and consider both theories of recovery. We believe that portion which deals with the injury to appellant's feelings is barred by the statute of limitations. It was held in Resthaven Memorial Cemetery v. Volk, 286 Ky. 291, 150 S.W.2d 908, that such actions to recover for mental pain and anguish were barred by the five-year statute of limitations, KRS 413.-120, rather than the one-year limitation statute. Appellant is barred because she discovered the condition of the graves in 1945 and did not commence action until 1952.

In connection with the trespass theory we have difficulty in deciding whether the claim is barred by the statute of limitations and our trouble arises, we believe, because the facts of this case have not

been fully developed. As we have indicated, the complaint was dismissed upon motion for summary judgment. It was developed by affidavit and by deposition of appellant on discovery that a predecessor of appellee company had set aside ground for burial purposes. Appellee knew of the cemetery for white persons on the right-hand side of a branch ascending, but did not know of the cemetery for colored people on the left-hand side. However, this parcel had been surrounded by a wire fence and the various graves marked by rough stones. Appellant testified that there were other graves there, perhaps as many as fifty. She visited the graves in 1940 and found that the company was covering some of the nearby area with slate and other refuse. In 1945 she visited the plot and found that the graves and the fence around them were completely covered. In 1951, when she again visited the cemetery, she found that the slate and other debris were burning and the fire and ash prevented access to the area. At one time, appellant said, the pile was "higher than the Anthony Hotel," and although she testified the fire was still burning in 1952, we cannot determine whether the refuse is mostly ash or whether the graves are still covered by great quantities of material.

The affidavits filed by the coal company were all to the effect that the existence of this particular cemetery was not known to the management, but the area was first used for sludge ponds and slate dumps in 1942 and 1943; that a slide occurred in 1944 which covered the graves and that the waste matter was ignited in 1945, which action prevented further sliding of the debris. No counteraffidavits were filed by appellant and the affidavits filed by appellee are sketchy.

■ It was stated in Continental Cas. Company v. Belknap Hardware & Mfg. Company, Ky., 281 S.W.2d 914, that the moving party has the burden of establishing that no genuine issue exists as to any material fact and he is entitled to summary judgment when the law is applied to those facts.

■ The burden resting on movant to make a prima facie case is not made lighter because the facts are uncontroverted. The duty remains to place before the court sufficient facts to enable him to apply appropriate principles of law.

■ We believe the affidavits and deposition failed to disclose a necessary fundamental fact. We are unable to learn from them the nature of the offending slate pile. Until we know this, we are unable to decide which of two rules of law is decisive of the case. Both of them pertain to the law of limitations, and either one may be applicable.

■ In the first place an action for trespass usually accrues when the trespass is committed. At that time the statute of limitations begins to run. These cases ordinarily involve a sudden invasion which is quickly terminated. In other cases where the invasion does not cease immediately and the trespass continues, one may recover damages for the injury inflicted during the five-year period immediately preceding the instigation of the action. This is pointed out in Prosser on Law of Torts, § 13, page 63, where it is written:

"The ordinary trespass is complete when it is committed; the cause of action accrues, and the statute of limitations begins to run at that time, although the consequence may be a permanent injury to the land. But in many cases, as where the defendant erects a structure or dumps rubbish upon the land of the plaintiff, the invasion is continued by a failure to remove it. In such a case, there is a continuing wrong so long as the offending object remains."

(In this connection, the opinion in Zella Mining Company v. Collins, 203 Ky. 178, 261 S.W. 1090, is of some interest.)

A vigorous literal application of the foregoing rule would force the abrupt

conclusion that limitation does not begin to run until the debris is removed. But we have not literally applied this rule in cases where a nuisance is involved.

We recognize that originally the distinction between trespass and nuisance was that which existed between the old action of trespass and action on the case. But so many of the cases which dealt with nuisance involved the situation where an obstruction on the land of one caused water to accumulate and stand on property belonging to another and in these cases we have built up a rather unusual theory concerning the number of actions which may be brought and the beginning point for the period of limitation.

█ It has been well established in these cases that for damages arising from a properly built and permanent structure, there must be one suit and one recovery for all damages, past, present and future. The statute begins to run when the structure is completed. If the structure is temporary, successive actions may be maintained for a five-year period next preceding the institution of the action.

█ We also have a rather unusual rule for defining whether a structure is permanent or temporary. It is pointed out in Louisville & N. R. Co. v. Laswell, 299 Ky. 799, 187 S.W.2d 732, and in many other cases, that if the structure is one which may not be readily remedied, removed or abated, at reasonable expense, or is of durable character intended to last indefinitely, it is permanent and only one recovery may be had for all damages sustained. If, however, it can be changed or repaired or remedied at reasonable expense, it is temporary, and, if it is temporary, the harm is then a continuing one and recovery may be had for the injuries as they occur. We see no reason why this same rule (usually applied in actions on the case) should not be applied here in order to determine whether the slate pile is and was of such a nature that it could be removed only at prohibitive expense.

Until evidence is produced in this case and the classification of the structure established, it is impossible to decide correctly whether the five-year statute of limitations, which applies to cases where a permanent structure is involved, is a bar to this action or whether recovery should be permitted on the theory that it is a continuing invasion which condition permits recovery during the last five-year period immediately preceding the instigation of the action.

We are of opinion, therefore, that appellee, in support of its motion for summary judgment, failed to offer proof on this vital fact and for that reason the case should be returned to the circuit court for further proof.

██ The appellee's defense of laches and estoppel is not applicable to the present case. Laches is something more than delay, and delay alone will not sustain this defense. There must be a showing that the party knew his rights and did not attempt to enforce them until the condition of the party who set up the defense had been so changed that he could not be restored to his former state. The delay must have caused an additional injury. Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S.W.2d 232; Card Creek Coal Co. v. Cline, 305 Ky. 473, 204 S.W.2d 571; Bates v. Mullins, Ky., 242 S.W.2d 104. In the case at bar appellant had no reason to complain until the graves had been completely covered.

█ We also find no reason for the application of the doctrine of estoppel in this particular case. To create an estoppel, there must be strong evidence of some positive act or false representation or concealment of a material fact. The party relying upon the estoppel must have acted or relied upon it to his detriment. Under certain conditions, silence may create an estoppel, but it is necessary that the silence of one party actually mislead the other to his detriment. 31 C.J.S. Estoppel § 88; Pomeroy Equity Jurisprudence, Vol.

3, § 812. In the instant case this element is lacking, for the action of appellee cannot be said to have resulted because of appellant's failure to speak. The graves were covered in 1942 or 1943 by the slide. She did not discover this condition until 1945, and it cannot be rightfully said that appellee has in any manner altered its position for the worse because of appellant's failure to act promptly. The circumstances do not call for the application of the doctrine of estoppel.

The judgment is therefore reversed and remanded for further proceedings. Any questions raised on this appeal, which were not decided, are expressly reserved.

SIMS and STEWART, JJ., dissent because they are of opinion that both actions are barred by the statute of limitations.