RENDERED:  OCTOBER 30, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0506-MR

STEVE D. HUBBARD                                             APPELLANT


v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 14-CI-02659


PRESTRESS SERVICES INDUSTRIES,
LLC                                                            APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE:  Steve D. Hubbard appeals from a final and appealable

order of the Fayette Circuit Court granting summary judgment to Prestress

Services Industries, LLC and dismissing the matter with prejudice.  We reverse.

## FACTS

Prestress Services Industries, LLC manufactures precast concrete products. Prestress owned property in Fayette County and operated a plant there when Hubbard bought and moved into a nearby house and lot in 1996. Hubbard knew of Prestress's location when he bought his home. But a vacant auto body shop building and lot lay between his property and Prestress's property at that time. And Hubbard later testified by deposition that he was not bothered by Prestress's operation for the first few years after moving to his house.

Prestress bought the auto body shop lot around the year 2000, and the vacant auto body shop building was apparently removed within a few years. Hubbard believed that Prestress increased its operations about 2004, and he started noticing dust apparently migrating from Prestress onto his property around that time. Hubbard first submitted a dust complaint to a state administrative agency and took photographs of dust on his property between 2004 and 2006. The Kentucky Division for Air Quality (DAQ) cited Prestress for sandblasting-related fugitive dust emissions migrating past its property line in 2006.

Hubbard claims that Prestress substantially increased production in or after 2010, but failed to implement necessary measures for dust and noise control. He later testified that dust and noise from Prestress got much worse and became unbearable in the five or six years preceding his December 2015 deposition. DAQ

issued notices of violations to Prestress for failing to properly control dust emissions in 2010, 2011, and 2014.  Prestress was ordered to pay a fine and agreed to a corrective action plan in December 2012.  But Hubbard alleges that Prestress has not complied with the corrective action plan or with other controlling law such as statutes, regulations, and local noise ordinances.  And he claims that its operation continues to cause noise pollution and dust falling on his property.

Hubbard initiated the underlying action in Fayette Circuit Court by filing a complaint in 2014, alleging that "[s]ince, at least 2010," Prestress trespassed on his property "with airborne dust and noise pollution."  (Record (R.) p. 3).  He asserted claims for private nuisance and trespass and requested compensatory and punitive damages as well as injunctive relief.  In 2015, he filed an amended complaint lacking any reference to dates or years in the factual allegations and adding claims including negligence, battery, and intentional infliction of emotional distress.[1]  Prestress's answers asserted that Hubbard's claims were barred by applicable statutes of limitations among other defenses.

After discovery proceeded for a few years, Prestress filed a motion for summary judgment.  It asserted that Hubbard's claims were time-barred and/or that

---

[1] The amended complaint contained 9 Counts entitled 1) Private Nuisance-Temporary, 2) Trespass, 3) Negligence, 4) Negligence Per Se, 5) Gross Negligence—Recovery of Punitive and Exemplary Damages, 6) Battery, 7) Intentional Infliction of Emotional Distress, 8) Negligent Infliction of Emotional Distress, and 9) Declaration of Rights.  (R. pp. 72-78).

Hubbard would otherwise be unable to prevail on his claims. For example, Prestress asserted that Hubbard could not prevail on temporary nuisance because he failed to come forward with proof relating to the correct measure of damages (reduction in value of use or fair rental value) since Hubbard's expert only discussed reduction in fair market value of Hubbard's property.

Following further briefing and a hearing, the trial court granted summary judgment to Prestress and dismissed the matter with prejudice. From our review of the record, the bases for summary judgment were: 1) all claims except temporary nuisance being time-barred, and 2) lack of proper proof of damages for temporary nuisance.[2]

Hubbard filed a motion to alter, amend, or vacate, arguing the trial court had misapplied the law. He also argued that the trial court had prematurely granted summary judgment before discovery had closed. And he complained the trial court had summarily dismissed several claims without discussing or analyzing them. Following a hearing, the trial court denied the motion. Hubbard then filed a timely appeal, asserting the trial court erred in granting summary judgment and

---

[2] In its written orders, which 1) granted summary judgment for Prestress and dismissed the case with prejudice, and 2) denied Hubbard's motion to alter, amend, or vacate, the trial court both times simply stated its basis as "for the reasons stated on the video record." We would prefer that orders briefly state grounds in writing, rather than obliquely refer to reasons in the video record. We should not have to expend considerable judicial resources to dig through the video record to discern the bases for a trial court's ruling.

dismissing his claims. Further facts will be set forth as necessary in the Opinion as we address whether summary judgment was properly granted for the reasons stated by the trial court.[3]

## ANALYSIS

*Standard of Review*

In reviewing the trial court's grant of summary judgment, we must determine "whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014). We review the trial court's decision to grant summary judgment under a *de novo* standard since it does not involve factfinding. *Id*.

In addition to reviewing the substance of the summary judgment ruling *de novo*, we "must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling." *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010). "It is not necessary to show that the respondent has actually completed discovery, but only that respondent has had an opportunity to do so."

---

[3] We note that the parties have raised many arguments in their briefs, which we have carefully considered. To the extent that we may not have explicitly discussed any arguments in this Opinion, they have either been rejected or we have not found them to be relevant in determining whether the trial court properly granted summary judgment for the reasons it stated on the record.

*Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628, 630 (Ky. App. 1979). "The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion." *Blankenship*, 302 S.W.3d at 668.

*Standard for Trial Court to Grant Summary Judgment*

Kentucky Rules of Civil Procedure (CR) 56.03 provides that summary judgment shall be granted if the pleadings and any evidence of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Before addressing whether the trial court properly granted summary judgment on specific claims, we first make clear that a trial court is not required to weigh the evidence or make factual findings when ruling on a summary judgment motion. *Steelvest v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991); *Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724, 730 (Ky. 1999). Thus, although Hubbard argues at several points in his brief that the trial court failed to make factual findings, we discern no error in the trial court not making factual findings when ruling on summary judgment.

That being said, we review whether the trial court did what it was supposed to do—determine whether the record showed no genuine issues of material fact and that Prestress was entitled to judgment as a matter of law. CR

-6-

56.03. In making this determination, the trial court was required to view the record in the light most favorable to the non-moving party and resolve all doubts in his favor. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); *Steelvest*, 807 S.W.2d at 480. The trial court must also apply the following rules: "Only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted." *Steelvest*, 807 S.W.2d at 482 (citation omitted). Yet "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* (citation omitted).

The parties disagree about whether discovery had closed as of the time of the summary judgment hearing.[4] Hubbard laments summary judgment being granted before discovery concluded, yet discovery had been proceeding for a few years when Prestress filed its summary judgment motion in January 2019.

---

[4] The trial court had issued a scheduling order on January 30, 2018, setting forth certain deadlines, including that discovery of facts be completed by April 20, 2018, and that Hubbard disclose his expert witnesses pursuant to CR 26.02(4) also by April 20, 2018. After these two April deadlines passed, Prestress filed a motion for an extension of its own expert witness disclosure deadline (originally June 20, 2018) based on Hubbard allegedly failing to fully comply with his expert witness disclosure obligations on time. Although Prestress cites to his motion for an extension in stating that the trial court did not extend deadlines which had already passed, the trial court's written orders do not explicitly address this. Instead, the trial court entered an agreed order stating only that the deadlines set forth in the January 2018 scheduling order were set aside and that the parties would confer on a new scheduling order. But other than another agreed order concerning scheduling of briefing and a hearing on Prestress's summary judgment motion, we have not come across another scheduling order issued by the trial court.

And an agreed order was entered with deadlines for filing additional briefs and a hearing date. Both parties submitted briefs with attachments including affidavits, depositions, and other documents, and Hubbard did not request additional time for discovery before the hearing. Regardless of whether discovery had closed, Hubbard had ample opportunity to respond to the summary judgment motion and to complete discovery. *See Blankenship*, 302 S.W.3d at 668; *Hartford Ins.*, 579 S.W.2d at 630. Thus, we find no abuse of discretion in the trial court's taking up the summary judgment motion when it did. *Blankenship*, 302 S.W.3d at 668.

Despite our finding no abuse of discretion in the *timing* of the trial court's consideration of the summary judgment motion, we conclude that the trial court erred in granting summary judgment upon *de novo* review of the merits.

*I. Did the Trial Court Properly Dismiss Claims as Time-Barred?*

*A. Permanent Nuisance*

A private nuisance occurs when "a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property . . . ." Kentucky Revised Statutes (KRS) 411.530(2); KRS 411.540(2).[5] A private nuisance can be temporary or permanent but not both. KRS 411.520(2). The

_____

[5] Specific factors to consider in determining if the defendant's property use constitutes a nuisance are listed in KRS 411.550.

difference is that a permanent nuisance cannot be fixed at a reasonable cost to the owner and "[i]s relatively enduring and not likely to be abated voluntarily or by court order." KRS 411.530(1)(b). Kentucky precedent indicates that the five-year statute of limitations in KRS 413.120 applies to nuisance claims. *See Lynn Min. Co. v. Kelly*, 394 S.W.2d 755, 757 (Ky. 1965).

As Hubbard did not file a nuisance claim until 2014, but had been aware of dust on his property since at least 2006, Prestress argued the nuisance claim was time-barred. But Hubbard asserted that the nature of Prestress's operation had changed significantly around 2010 or later resulting in greatly worsening dust and excessive noise. So, he claimed that Prestress's operations did not rise to the level of nuisance—causing substantial annoyance or interference with his use and enjoyment of his property—until around 2010. More specifically, he argued that the nuisance did not become or appear permanent—enduring, unlikely to be abated, not able to be remedied at reasonable cost—until around 2010.

The trial judge inquired at the hearing whether there was any evidence of record of Prestress expanding its operations in 2010 or later at the summary judgment hearing. Hubbard's counsel asserted that aerial photographs not yet part of the record would show such expansion. But the trial court inquired as to exactly when any expansion occurred. Hubbard was unable to identify any evidence of

record showing that Prestress had expanded its operation (such as acquiring more property or zoning changes) after Hubbard became aware of migrating dust in the 2004-2006 period.

Hubbard also asserted that Prestress increased its production based on its boiler usage reports not yet in the record. And he pointed to evidence of record that state environmental agencies investigated and found dust control violations in 2010[6] and later—including both documents from the state agencies and the deposition testimony of Prestress's former environmental safety manager, filed in the record. He also cited the manager's deposition testimony about poor dust control practices by Prestress, like not consistently using dust filters and cutting a hole in a building to allow dust to escape. From our review of this deposition testimony, the manager testified to working at Prestress from 2006 to 2014 and to investigations occurring in 2010 and later specified years. But he did not specifically state the time frame of when certain actions by Prestress occurred— such as cutting the hole in a building to let dust out.

---

[6] We are aware that Prestress argued to the trial court that most of these state agency findings involved conditions in Prestress's haul road and did not directly affect Hubbard's property. However, the trial court did not indicate that it was relying on this factor in granting summary judgment in Prestress's favor or assess whether there might be issues of fact about whether conditions in the haul road affected Hubbard's property. And, of course, we must view the facts in the light most favorable to Hubbard.

Based on a lack of evidence that Prestress had expanded after the early 2000s and that Hubbard was aware of the problem (dust emissions)[7] by at least 2006, the trial court determined that any permanent nuisance claim was barred by the statute of limitations. Hubbard asked the trial court to reconsider, arguing that new causes of action were continually accruing due to continuing or recurrent dust emissions and noise so that recovery was only barred for injuries occurring over five years before the complaint. But citing *Kelly*, *supra* (which similarly involved continuing or recurrent dust emissions), the trial court determined that permanent nuisance claims were time-barred although temporary nuisance claims were not. *See id*. at 757 (citation omitted) (holding that claims for admitted nuisance from continuing coal dust emissions were time-barred if nuisance was permanent, but if nuisance was temporary, "this was a continuing trespass for which damages could be recovered for each recurring injury (subject to the limitation that damages could not be recovered for so much of the injury as occurred more than five years before the commencement of the action)").

Although this case may appear somewhat similar factually to *Kelly* as both involve dust emissions occurring over a period of years, there are significant differences. Reviewing a judgment on a jury verdict and award of damages in

---

[7] Although the trial court seemingly focused on dust alone as the basis of the nuisance claim, we note that Hubbard had also asserted noise problems as a basis for nuisance as well as some other claims.

-11-

*Kelly*, the Court briefly referenced evidence of excessive coal dust without explicitly discussing whether dust emissions remained constant, changed significantly, or even stopped at some points and started back up at others.[8] *Id*. at 759. And there was no discussion of how long the plaintiffs had been aware of dust on their property from the defendant—possibly they could have been aware of the dust more than five years before the complaint was filed, possibly not.

We do not review a judgment on a jury verdict here, but the trial court's grant of summary judgment. And we agree with Hubbard that construing the evidence and drawing all reasonable inferences in his favor, there were genuine issues of material fact about when the permanent nuisance cause(s) of action accrued. For example, despite Hubbard's first filing dust complaints with state agencies in 2004 or 2006, he testified by deposition that he perceived worsening levels of dust and noise becoming "unbearable" around 2010 or later. Thus, there are potential issues of fact whether Prestress's operations caused him substantial annoyance or interference with his property use and enjoyment beginning in the earlier 2004-2006 period or not until 2010 or later. Also, despite any lack of proof that Prestress expanded its operations after Hubbard noticed dust from Prestress on

---

[8] We note that the trial court here had inquired as to whether problems from Prestress had been fixed entirely at some point, so that an old nuisance may have come to an end but a new one begun. But the trial court noted there was no evidence of record that such problems had ever been definitively fixed for a time. Generally, the parties seemed to recognize that Prestress was busier at some times than others based on such factors as seasonal cycles and current projects.

his property by 2006, he also presented other evidence indicating that it was conducting its operations differently in 2010 or later than it did in 2006. For example, Hubbard presented the manager's testimony about Prestress's bad practices (including cutting holes in buildings to let dust out) during his tenure there from 2006 to 2014. Although the manager may not have stated whether these practices occurred within the statutory limitations period, a fact-finder might reasonably infer that such actions occurred in or after 2010 considering evidence of state agency findings of dust violations in 2010 or later years. In short, looking at the record in the light most favorable to Hubbard and drawing all reasonable inferences in his favor, we conclude it would not be impossible for him to show some change in Prestress's operations causing a nuisance to arise during the five-year limitations period.

As we agree with Hubbard that genuine issues of material fact exist concerning when Prestress's use of its property amounted to a nuisance, we reverse the trial court's grant of summary judgment on permanent nuisance claims based on the statute of limitations.[9]

---

[9] The trial judge orally stated that the nuisance alleged did not appear to qualify as a permanent nuisance. But she also explained that had Hubbard's claims been filed soon after he discovered the dust problems, she believed that he would be entitled to have the jury decide if the nuisance was temporary or permanent as in *Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636 (E.D. Ky. 2011). But as she had determined that a permanent nuisance claim for dust emissions was barred by the statute of limitations, she agreed with Prestress's argument that it would be improper to submit a permanent nuisance claim to a jury.

*B. Trespass*

Pursuant to KRS 413.120(4), trespass claims are subject to a five-year statute of limitations—thus, sharing the same limitations period as nuisance. The trial court granted summary judgment on trespass, concluding this claim was time-barred since Hubbard had notice of dust by 2006 but did not file his complaint until 2014.[10] Basically, it found this claim time-barred for the same reason it found the permanent nuisance claim time-barred although its discussions of trespass were considerably briefer.

Hubbard contends the trial court failed to recognize the continuing or recurring nature of the trespass and apply the law accordingly. He asserts that since the trespass was continuing or recurring, the statute of limitations should not be applied to bar recovery for incidents of trespass occurring less than five years before he filed suit. In support, he cites *Kelly*, 394 S.W.2d at 757 (recovery not time-barred for injuries occurring within five years of complaint for temporary

---

Although we reverse for other reasons, we take note of Hubbard's argument that the trial court was required to determine if the nuisance was permanent or temporary before applying the statute of limitations. We disagree with this argument, as applied to the context of this case. In ruling on the summary judgment motion, it was appropriate for the trial court to consider whether Prestress was entitled to judgment as a matter of law based on the record without resolving whether any nuisance was temporary or permanent despite our disagreement with the ultimate outcome.

[10] The parties orally debated issues such as actual harm and the appropriate measure of damages for trespass during hearings. But the only issue which the trial court definitively ruled on regarding trespass was the statute of limitations from our review of the record.

nuisance/continuing trespass claims) and *Wimmer v. City of Ft. Thomas*, 733

S.W.2d 759 (Ky. App. 1987). He concedes that he may not recover for incidents

of trespass occurring more than five years before he filed suit.

*Wimmer* involved claims of property damage from runoff water

allegedly caused by defendant city's streets lacking gutters or rain basins. The

Court specifically noted that the streets lacked gutters or rain basins when the

plaintiff bought his property and that the plaintiff became aware of "slippage" of

his property due to erosion soon thereafter. *Id*. at 760. As continuing trespass

from an offending structure (*i.e.*, improperly maintained streets) was alleged,

application of the statute of limitations was somewhat complicated. But the Court

construed precedent as allowing the plaintiff to recover for injuries occurring

within five years in certain situations, such as if the offending structure was

temporary:

> (1) If the offending structure is permanent and non-negligent, suit must be brought within five years from the date the cause of action accrued;
>
> (2) If the offending structure is permanent but negligently or unlawfully built or maintained, recurring recoveries may be had as the injuries occur;
>
> (3) If the offending structure is temporary, recurring recoveries may be had irrespective of negligence;
>
> (4) If the offending structure is permanent but unlawfully built or negligent, only a one-time recovery brought within five years from the date the cause of action

accrued is allowed if it be shown that the structure cannot be remedied at an expense reasonable in relation to the damage[.]

*Id*. at 760-61.[11]  As the trial court failed to consider whether the plaintiff could recover for injuries occurring within five years of his filing the complaint under these rules, the Court reversed the trial court's dismissal of the action as time-barred and remanded the case to the trial court to reconsider its ruling with a reminder that the defendant had the burden of proving entitlement to an affirmative defense.  *Id*. at 761.

Unsurprisingly, Prestress does not agree that Hubbard may be allowed to recover for injuries occurring within five years of his complaint on a "continuing trespass" theory.  Instead, Prestress argues that the trespass claim was time-barred since Hubbard was aware of dust and who caused it by 2006 even if he did not then perceive the extent of his injury.  In support, Prestress cites for our consideration the unpublished case of *Cantrell v. Ashland Oil, Inc.*, Nos. 2006-SC-000763-DG & 2007-SC-000818-DG, 2010 WL 1006391 (Ky. Mar. 18, 2010).  But unpublished cases are not binding precedent.  Kentucky Rules of Civil Procedure (CR) 76.28(4)(c).  Furthermore, *Cantrell* did not explicitly address any arguments about

---

[11] The Court noted that in this context, *permanent* meant "cannot be readily remedied, removed or altered at reasonable expense, or is durable and meant to last indefinitely" whereas *temporary* meant "can be changed or repaired or remedied at reasonable expense."  *Wimmer*, 733 S.W.2d at 761 (citing *Fergerson v. Utilities Elkhorn Coal Co.*, 313 S.W.2d 395 (Ky. 1958)).

a continuing or recurring trespass. Instead, it simply upheld the dismissal of water contamination claims as the plaintiffs had long known of the defendant contaminating their water, although they may not have been aware of the identity or properties of certain contaminants in their water. *Id*. at *10.

We do not rely on the unpublished case cited by Prestress. Instead, we apply published cases such as *Kelly* and *Wimmer*, *supra*, recognizing that recovery for injuries occurring within five years of the complaint may be allowed for continuing or recurring trespasses. The majority in *Wimmer* recognized that recovery for injuries occurring within five years of the complaint was possible for continuing trespasses in certain situations, despite the dissent's noting that the plaintiffs had been aware of the basic problem for over 30 years. *See Wimmer*, 733 S.W.2d at 761 (Lester, J., dissenting). Construing the evidence in the light most favorable to Hubbard, he may be entitled to recover for recurring injuries caused by continuing trespasses as discussed in *Wimmer*. Thus, we reverse the trial court's grant of summary judgment for Prestress on the trespass claim.

*C. Remaining Claims*

Except for the temporary nuisance claim, the trial court determined all other claims to be time-barred for the same reasons it found permanent nuisance claims time-barred: Hubbard's being aware of dust from Prestress on his property by 2006. It did not specifically discuss elements of these claims, how causes of

action for these other claims accrued, or what statutes of limitations applied to these claims. Thus, it did not state substantive grounds for determining these claims to be time-barred, other than the same reasoning for granting summary judgment on permanent nuisance which we have already rejected. Thus, we likewise reverse its granting summary judgment on these claims as time-barred.

> *II. Did Trial Court Err in Granting Summary Judgment on Temporary Nuisance for Lack of Proper Proof of Damages?*

Hubbard argues the trial court erred in granting summary judgment on temporary nuisance based on its conclusion that he had not come forward with proper proof of damages for this claim.[12] We agree that the trial court erred in granting summary judgment on the temporary nuisance claim.[13]

---

[12] The trial court determined that Hubbard's claim for temporary nuisance, unlike permanent nuisance, was not barred by the statute of limitations. The sole basis for its summary judgment on temporary nuisance was its determination that Hubbard had failed to come forward with appropriate proof on damages. Thus, we need not further discuss whether a temporary nuisance claim was timely brought, despite Hubbard's discussion of the timeliness of temporary nuisance claims in his brief.

[13] We briefly note other ancillary issues about damages for temporary nuisance discussed in the parties' briefs although we do not find these germane to resolution of this case since they do not concern actual rulings made by the trial court:
  1) Hubbard contends that issues of damages are questions of fact which should always be submitted to a jury and never resolved by summary judgment. He cites no authority for this proposition, however.
  2) Prestress argues that Hubbard changed position at times about whether it was necessary to present expert evidence regarding valuation. We do not construe Hubbard's briefs as arguing that no expert evidence of valuation was necessary, however. Should the case proceed further toward trial and issues arise about whether lay witnesses could testify about their opinions about valuation, such issues may be appropriately addressed through filing motions *in limine* with the trial court.
  3) Prestress argues that Hubbard cannot recover for annoyance, discomfort, and so forth for temporary nuisance under KRS 411.560(3). Hubbard did not clearly respond to this

-18-

A permanent nuisance causes material reduction in fair market value, whereas a temporary nuisance causes reduction in the value of use or reduction of rental value. KRS 411.540(2); KRS 411.530(2). Thus, for permanent nuisance claims, "compensatory damages shall be measured by the reduction in the fair market value of the claimant's property caused by the nuisance, but not to exceed the fair market value of the property[.]" KRS 411.560(1)(a). For temporary nuisance claims regarding the claimant's owner-occupied property, "compensatory damages shall be measured by the diminution in the value of the use of the property which resulted from the nuisance." KRS 411.560(1)(a). For temporary nuisance claims regarding property not occupied by the claimant, "compensatory damages shall be measured by the diminution in the fair rental value of the property which resulted from the nuisance." KRS 411.560(1)(b)2. Thus, for Hubbard's claim of a temporary nuisance affecting his owner-occupied property, the correct measure of damages would be for reduction in the value of use.

Prestress argues that summary judgment on Hubbard's temporary nuisance claims was properly granted because Hubbard failed to come forward with evidence of damages for temporary nuisance (reduction in value of use or

argument in his reply brief and does not seemingly challenge the application or validity of this statute. And the trial court did not explicitly rely on this statute in granting summary judgment for temporary nuisance, instead pointing to the lack of a tangible figure directly relating to reduction in value of use or reduction in fair rental value.

reduction in rental value). Instead, it asserts that Hubbard only presented proof relevant to determining damages for permanent nuisance (reduction in fair market value). Hubbard disagrees, contending he came forward with proper proof of damages for this claim or should be allowed to amend his expert opinion to conform to the proper measure of damages.

Hubbard's expert,[14] an appraiser, stated in her report a tangible figure of what the fair market value of Hubbard's property would normally be considering its amenities such as its swimming pool and square footage of living space. But she opined that the property was now worthless (*i.e.*, had a fair market value of $0) as it could not be sold on the open market due to dust and noise from Prestress based on Hubbard's and his neighbors' recent unsuccessful efforts to sell. In her deposition, she admitted that she had also performed a rental analysis but that she deleted this from her report upon advice of Hubbard's counsel. Presumably, her rental analysis would have entailed a determination of the fair rental value of Hubbard's property.

The trial court determined that the temporary nuisance claim must be dismissed due to lack of proper proof in the record of damages for a temporary

_____

[14] We focus on the expert testimony in assessing whether it was proper to grant summary judgment. Although Hubbard also points to his own testimony about how his use of the property was affected by dust and noise from Prestress, he has not pinpointed where his own testimony set forth tangible figures such as dollar amounts to replace or repair equipment allegedly required due to dust on his property.

nuisance. The trial court specifically noted the lack of a tangible figure from which the jury could make deductions to properly award damages for reduction in value of use or reduction in rental value.

The trial court orally discussed supporting authority including *Adams Construction v. Bentley*, 335 S.W.2d 912 (Ky. 1960) and *Lynn Mining Co. v Kelly*, *supra*. In *Bentley*, *supra*, the Kentucky high court reversed the jury's award of damages for a temporary nuisance as excessive and stated that evidence of a "tangible figure" for determining the value of plaintiff's use of property must be presented so that the jury would not determine damages based on speculation or its members' own experiences. 335 S.W.2d at 914. And in *Kelly*, *supra*, the Kentucky high court cited *Bentley* and determined that the trial court erred in not granting a directed verdict for the defendant on temporary nuisance because the proof related only to reduction in fair market value—not the correct measure of damages for temporary nuisance—so that the plaintiff failed to prove damages which could be recovered for a temporary nuisance. 394 S.W.2d at 760.

While *Kelly* holds a defendant's request for a directed verdict must be granted where the plaintiff fails to present evidence of a tangible figure relating to reduction in value of use or rental value, Kentucky state court standards for

granting directed verdicts are not the same as those for granting summary judgment. *See Steelvest*, 807 S.W.2d at 482.[15]

Prestress cites for our consideration a recent unpublished case in which summary judgment on a temporary nuisance claim was upheld and the lack of proof of tangible figures of rental value of non-owner-occupied property was noted. *See VF Rental Properties, LLC v. Foy*, No. 2013-CA-001830-MR, 2015 WL 128533, at \*3 (Ky. App. Jan. 9, 2015)[16] (noting that correct measure of damages for temporary nuisance was reduction in rental value and that plaintiff presented no evidence of diminution of rental income due to condition of defendants' rental property). But the summary judgment in *Foy* was also (and perhaps primarily) upheld because the plaintiff failed to present evidence that the tenant defendants' property use interfered with the plaintiff landowner's use and enjoyment of its property so "it could not show the existence of an actionable nuisance." *Id*. Thus, it does not clearly resolve whether summary judgment should be granted where evidence of interference with property use and enjoyment is presented, but where there is no proof of a tangible figure establishing reduction in loss of use or rental value.

---

[15] In ruling on a directed verdict motion, the trial court must draw all reasonable inferences from the evidence in the non-moving party's favor and only grant the motion if "there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Argute v. Harrington*, 521 S.W.3d 550, 554 (Ky. 2017) (citation omitted).

[16] We do not rely on this unpublished case but simply discuss it in response to Prestress's brief.

Hubbard contends he came forward with affirmative evidence of damages for temporary nuisance—his appraiser's opinion testimony that his property had no (or $0) fair market value due to coal and dust although it had a "before value" of $205,000 based on its amenities.  And he quotes *Bentley*, *supra*, as suggesting that fair market value could even provide a starting point for determining reduction in value of use and/or fair rental value:  "Even the market value of the home might have provided a reasonable basis against which the value of one year's use could be measured."  335 S.W.2d at 914.

The plaintiffs' property in *Bentley* included an owner-occupied home, two rental houses, and a store.  The defendant had caused dust and contamination to fall over this property for about a year, forcing the plaintiffs and their infant to vacate their home for a few months.  The plaintiffs' property as a whole was worth $16,000 and one of the rental houses was leased for $15 a month.  *Id*. at 913.  But the plaintiffs presented no more specific evidence at trial regarding the fair market value of the home alone, rental value of the home and other houses, or rental income lost.  The jury awarded the plaintiffs $2,500, which the Court determined was excessive for loss of use of the property for a year, even if the home itself was valued at $16,000.  So, it reversed the award and remanded for a new trial on damages.  *Id*. at 914.

The *Bentley* Court noted the difficulty of quantifying damages for a temporary nuisance affecting owner-occupied property under the proper measure of damages—loss of value of use, which is often equated to, although not the same thing as, loss of rental value. To avoid jury awards based solely on speculation or personal experience, the Court stated, "there must be introduced in evidence some tangible figure from which the value of the use reasonably can be deduced . . . ." *Id.*

The trial court here quoted *Bentley*'s requirement of a tangible figure from which deductions could be made. Noting Hubbard's expert's opinion of fair market value of Hubbard's property being $0, the trial court concluded that nothing could be deducted from this value. Hubbard's counsel suggested a capitalization rate could be applied to the fair market value (presumably of Hubbard's property if not for the noise and dust) to arrive at a fair rental value, but the trial court noted that no capitalization rate was set forth in the expert's report, either.

Although Hubbard's proof of damages at the time of the hearing was not ideally stated in the precise terms utilized in statutes and case law regarding damages for temporary nuisance, it would not be impossible for him to prove reduction in the value of his use of his property construing the record and drawing all reasonable inferences in his favor. Hubbard's expert's opinion that his property had no market value due to dust and noise at least arguably suggests some

reduction in value of use of the property.  And Hubbard's expert's opinion about what the value of Hubbard's property would otherwise be if not for the noise and dust provides a tangible figure from which deductions could be made to assess damages for loss of use.

Thus, although it may be difficult for Hubbard to obtain a verdict and a sustainable jury award of damages for temporary nuisance based solely on the present proof, it would not be impossible for him to produce evidence warranting judgment in his favor.  So, the trial court erred in granting summary judgment on this ground.

*III. Other Considerations*

In addition to challenging the grant of summary judgment on his nuisance and trespass claims, Hubbard contends the trial court erred in summarily dismissing his remaining claims without discussing or analyzing them.  He asserts "[i]t is unclear from the record the exact grounds upon which the Circuit Court based its dismissal of these claims." (Appellant's brief, p. 25.)  As previously discussed, it appears to us that these remaining claims were erroneously dismissed as time-barred based on evidence of dust on Hubbard's property by 2006.

We decline to reach whether granting summary judgment on these remaining claims is warranted for reasons not addressed by the trial court, as there are no substantive determinations on these issues for us to review.  *See Klein v.*

*Flanery*, 439 S.W.3d 107, 122 (Ky. 2014) (citation omitted) ("As an appellate court, we review judgments; we do not make them."). In sum, we cannot let the trial court's grant of summary judgment for Prestress and dismissal of Hubbard's case stand based on the reasons the trial court gave for granting summary judgment, and we need not opine on issues not previously resolved by the trial court.

## CONCLUSION

For the foregoing reasons, we reverse and remand for further proceedings in conformity with this Opinion.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Randal A. Strobo
Clay A. Barkley
Louisville, Kentucky

Donald R. Todd
Lexington, Kentucky

BRIEF FOR APPELLEE:

Ronald L. Green
James M. Inman
Lexington, Kentucky