## Resthaven Memorial Cemetery, Inc., et al. v. Volk.

April 29, 1941.

Dodd & Dodd for appellants.

Beckham Overstreet and Clarence Gordon Barrickman for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Margaret Volk died December 7, 1934, a resident of Louisville, Kentucky. At the time of her death her husband, George Volk, who was the plaintiff below and appellee in this appeal, was confined in a Louisville hospital and unable to make arrangements for the burial of Mrs. Volk or to attend the funeral, and the arrangements for the funeral and burial were entrusted to her

son-in-law, Adam Harden, who authorized John Maas, an undertaker, to take charge of the funeral and burial, including the purchase of sites for two graves in Resthaven Cemetery, one for the grave of Mrs. Volk's immediate burial and the other for the burial of her husband, George Volk, upon his death. Mr. Maas telephoned the office of the appellant, Resthaven Memorial Cemetery, Inc., hereinafter called the Cemetery Company, instructing the person in charge to select two grave sites as indicated above, and to prepare the grave for the burial of Mrs. Volk on December 10, 1934, and to notify Maas of the grave, lot and section of the cemetery selected. Thereafter, and before Mrs. Volk's burial, Maas was notified by the Cemetery Company that it had selected and prepared grave site No. 5, of lot No. 197, in Section 8, of the cemetery for Mrs. Volk's burial and that an adjoining space had been reserved for the future burial of George Volk.

Pursuant to the arrangements made, Mrs. Volk was buried in grave No. 5, of lot No. 197, Section 8, the grave being prepared by the employees of the Cemetery Company under the directions of Frank J. Vogt as agent and representative of the Cemetery Company, or, superintendent and agent of its codefendant, Resthaven Memorial Park and Cemetery Association, hereinafter called the Cemetery Association, which had some connection with the Cemetery Company, and which connection or joint liability is an issue in this case and will be discussed later in this opinion.

Mrs. Volk's body was buried on December 10 in the grave prepared as hereinabove stated, but it later developed that that grave site had been previously sold to another person and upon discovery of the mistake, which was but a day or two after the burial, and without and notice to plaintiff or any member of Mrs. Volk's family, her body was disinterred and removed and reinterred in another grave in an adjoining section of the cemetery, the distance being about eleven feet. According to the evidence of George Volk, the plaintiff, and other members of the Volk family, none of them were notified or informed of the mistake and the disinterment and removal of Mrs. Volk's body and its reinterment in the other grave until in May, 1935. During the interval between the time of the burial December 10 and May, 1935, the children of Mrs. Volk and perhaps other mem-

bers of the family frequently visited the cemetery and placed flowers upon the grave or grave site where Mrs. Volk's body was originally buried, thinking that her body rested there. However, on Mother's Day in May, 1935, Mr. Harden requested of one of the officials or representatives of the Cemetery Company, or the Cemetery Association, that a receptacle for flowers be placed at the grave of Mrs. Volk, referring to the grave where she was originally buried, and Mr. Harden was then informed of the mistake and the disinterment and reinterment of Mrs. Volk's body as above stated.

Thereafter, in April, 1936, plaintiff brought this action in the Jefferson circuit court against the Cemetery Company alleging that the disinterment and reinterment of the body of his deceased wife was without his consent or knowledge, or any member of the family, all of which was done secretly, wantonly, and with gross carelessness and negligence, and that the body of his deceased wife was reinterred in a negligent manner, the casket being only seventeen and one-half inches from the surface of the ground; that by reason and on account of the acts of defendant, plaintiff had been caused to suffer and is now suffering and will continue to suffer great mental pain and anguish to damage in the sum of $25,000. The Cemetery Company filed its answer consisting of three paragraphs, the first of which was a traverse and in the second it pleaded the organization of the Cemetery Company and the organization of the Cemetery Association, setting out their relations to and connection with each other, and alleged that the interment, disinterment and reinterment was done by the Cemetery Association through Mr. Vogt, its superintendent, and paid by funds procured from interest on the "perpetual care fund" which was impressed with a trust and not subject to tort liability, all of which plaintiff and other purchasers of grave sites had notice and were bound thereby. Plaintiff filed his reply to the answer and later, March 23, 1937, filed an amended petition making the Cemetery Association party defendant. The defendants filed their separate answers pleading the statute of limitations, Section 2516, insisting that the action was in tort predicated entirely upon the injuries to the plaintiff's feelings, which comes within the category of personal injuries, and that both the original action against the Cemetery Company and the one against the Cemetery Asso-

ciation by amended petition were filed more than one year after the injury complained of which was on December 12, 1934.

Numerous demurrers, motions to strike, etc., were made by the respective parties, which are not necessary to discuss herein. Issue finally joined upon the pleadings indicated above and a jury trial resulted in a verdict and judgment thereon in favor of the plaintiff in the sum of $1,000. Motions and grounds for a new trial were seasonably made and overruled, and this appeal results.

The points discussed in brief of defendants and relied on for reversal, are (1) the action was barred against both or either defendant by the one-year statute of limitations, Section 2516, (2) the funds or assets owned by the defendants are impressed with a trust and not subject to tort liability, and (3) the evidence is insufficient to take the case to the jury as against the Cemetery Company, since the evidence shows conclusively that the acts complained of were committed solely by the Cemetery Association. We will discuss the points in the order named.

Defendants do not contend that the law imposed no duty upon them to notify plaintiff of the disinterment, removal, and reinterment of the body of his wife (Louisville Cemetery Association v. Downs, 241 Ky. 773, 45 S. W. (2d) 5), but they rely upon the defenses mentioned above.

Section 2516, Kentucky Statutes, deals with actions that must be brought within one year after accrual of right, among which is "An action for an injury to the *person* of the plaintiff  *  *  *." (Our italics.) The argument is that since plaintiff's cause of action is for mental pain and suffering, or injury to his sensibilities, it is none the less an injury to his "person" in the meaning of the statute, supra.

In Menefee v. Alexander, 107 Ky. 279, 53 S. W. 653, 654, 21 Ky. Law Rep. 980, which was an action for damages resulting from the malpractice of a physician, it was contended that the injuries resulting from the treatment of the patient were injurious to his person within the meaning of Section 2516. In denying that contention the court said:

"The phrase, 'an action for an injury to the person of the plaintiff,' in the statute quoted, refers to those cases where the personal injury is the gist of the action; such as actions for assault and battery, and the like. If a druggist should sell a man poison for a harmless medicine, the suit for damages therefor would not be an action for injury to the person, although great suffering or loss of health had resulted from it. * * *"

It will be noted that in the illustration, supra, there would have been actual physical injury to the plaintiff which is a stronger reason for bringing it within the purview of Section 2516, than in the present case where no physical injury was sustained. Further on in the same opinion the court said:

"If the words, 'an action for an injury to the person of the plaintiff,' in the first clause of Section 2516 of the Kentucky Statutes, above quoted, had been intended to cover actions for personal injury growing out of negligence or a breach of duty on the part of the defendant, then the next clause of the section, including within its operation injuries to persons by railroads, would have been wholly unnecessary, and several of the other actions expressly named in the following clauses might have been omitted."

In Wood v. Downing's Adm'r, 110 Ky. 656, 62 S. W. 487, 489, 23 Ky. Law Rep. 62, also an action for damages against a physician for malpractice, the court referred to the Menefee case, supra, with approval, and again held that the phrase "an action for an injury to the person of the plaintiff," refers to those cases where the personal injury is the gist of the action, such as assault and battery, and the like. Also, in Western Union Telegraph Co. v. Witt, 110 S. W. 889, 891, 33 Ky. Law Rep. 685, an action for damages for mental pain and suffering endured by the plaintiff because of the defendant's failure to deliver a telegram informing him of the death of his sister, the court said:

"The damages for the failure to deliver a telegram are not an injury to the person in the meaning of Section 2516, supra. This section contemplates a physical injury to the person. Ordinarily actions brought under this section sound in tort, and are

not distinctly based upon a contractual relation, although the tort may have its origin in such relation. To illustrate, when a common carrier undertakes to transport a passenger, a contract relation is entered into, and yet, if the passenger is injured, a tort has also been committed that is an injury to the person. And, as the injury to the person rather than the breach of the contract is usually the foundation of the claim for damages, it has been held that this statute applies to actions to recover damages for injuries to the person, although the injury results primarily from the breach of the contract by the carrier in failing to safely transport the passenger."

These cases were decided before the enactment of Section 2516, which specifically provides that actions against physicians for malpractice must be brought within one year.

While the cases, supra, are based to some extent upon the theory that the causes of actions involved therein rested upon a breach of a duty or an implied promise to perform a duty, yet it is our view that the case at bar comes within the same category. It appears from the articles of association or organization of the defendants, cemetery companies, they undertook to and it was their duty to protect and look after the graves in the cemetery, and further, the law imposes upon them the duty of notifying the next of kin of the disinterment of any body buried in the cemetery, a duty which defendants admit they breached.

Also, in determining the applicable section of the statute of limitations, Section 2515 of the Statutes must be taken into consideration. This section enumerates actions that must be brought within five years after accrual of right, among which is "an action for the injury to the *rights* of the plaintiff, not arising on contract, and not hereinafter enumerated." Then the following section (2516) enumerates certain actions which must be brought within one year, which also might be considered as an injury "to the rights" of a person which were originally included in Section 2515 and would still be within that category but for their specific exclusion therefrom by Section 2516, among which is an injury to the *person* of the plaintiff.

The word "rights" as used in Section 2515 is a much broader term than the word "person" as used in Section 2516. The former would include an injury to any right, property, physical or bodily injury, or injury to the sensibilities, that is, mental anguish and the like. It would appear, therefore, that the word "person" appearing in Section 2516 was used advisedly and with the view of taking from the broad meaning of the word "rights" appearing in Section 2515, bodily or physical injuries and placing such actions within the one-year statute. It is obvious, therefore, that since all the actions enumerated in Section 2516 were previously covered by Section 2515, the only purpose of the former was to take certain actions from the category of the latter which were included in the broad phrase "an action for the injury to the rights of the plaintiff." We conclude, therefore, that plaintiff's cause of action comes within the five-year statute of limitations as provided in Section 2515.

There is still another reason why the plea of the one-year statute of limitations is not available to the defendants. It is shown by the uncontradicted evidence of the plaintiff and the members of his family that defendants purposely veiled with secrecy the acts complained of and plaintiff and all the other members of the family were kept in ignorance of the same until May, 1935, when they received the information that Mrs. Volk's body had been disinterred and reinterred in another grave, but that information went no further than to indicate that defendant Cemetery Company committed the act, and the action against it was brought within one year thereafter. However, defendants purposely kept information from plaintiff that defendant Cemetery Association committed the acts or had any part or connection therewith, until the Cemetery Company filed its answer pleading that the act was committed solely by the Cemetery Association whereupon plaintiff immediately amended his petition making the association a party thereto.

It is the settled rule in this and all other jurisdictions, so far as we are advised, that when a wrongdoer intentionally conceals his unlawful act the statute of limitations begins to run when the person injured learns of the unlawful act rather than from the time of the commission of the act.

In Metropolitan Life Insurance Co. v. Trende, 53 S. W. 412, 21 Ky. Law Rep. 909, which was an action on an insurance policy, the facts and circumstances being as set out in the opinion, it was held that because the defendant insurance company purposely concealed from the plaintiff the facts upon which the action was based, it was precluded from claiming the benefits of the statute of limitations because of its intentional concealment of the facts from the plaintiff. In Falls Branch Coal Co. v. Proctor Coal Co., 203 Ky. 307, 262 S. W. 300, 305, 37 A. L. R. 1172, wherein a like question was involved, the court followed the rule adopted by the Supreme Court of Pennsylvania in Lewey v. H. C. Fricke Coke Company, 166 Pa. 536, 31 A. 261, 28 L. R. A. 283, 45 Am. St. Rep. 684, and thus quoted therefrom in part:

" 'Mere ignorance will not prevent the running of the statute in equity any more than at law; but there is no reason, resting on general principles, why ignorance that is the result of the defendant's conduct, and not of the stupidity or negligence of the plaintiff, should not prevent the running of the statute in favor of the wrongdoer.' "

It follows, therefore, that since plaintiff brought his action against the defendants within one year after he learned of the wrongful acts committed by them, the action was brought in time even under the one-year statute of limitations.

(2, 3) The next two points relied on by defendants (that the Cemetery Association is solely responsible for the acts complained of, and, the only funds or assets it has is impressed with a trust and not liable for tort) are so interrelated that a disposition of one has a considerable bearing upon, if not conclusive of, the other. Hence, we will dispose of them together. It is shown by the undisputed evidence of the undertaker that he called the office of the Cemetery Company and made arrangements with the person who answered the telephone for the purchase of the lots and the burial of Mrs. Volk. He filed with his evidence a copy or form of a burial certificate or permit which was issued in the name of the Cemetery Company. Whether or not the person in the office of the Cemetery Company to whom the undertaker talked and with whom the arrangements were made was an employee of the Cemetery Company or its associate, the Cemetery Association, he did not know. Be that as it

may, however, if an employee of the Cemetery Association was in the office of the Cemetery Company and answered its telephone calls and transacted business for it, such circumstances, under the proven facts, furnishes evidence that it was acting as the agent of its associate company.

The written agreement which was of record at the time of the purchase of the graves in question and upon which defendants rely as establishing their contention that the Cemetery Association was an independent or separate entity from that of the Cemetery Company, shows that it was agreed between the two companies that the Cemetery Association would have charge of selling grave sites and collecting the purchase price therefor and would retain twenty percent of the same and spend it for the purpose of maintaining the graves, cemetery, etc., which, it is argued, became impressed with a trust and not liable for any purpose except that set out in the written agreement.

It appears from the written agreement between the companies that the Cemetery Company is the parent or holding company, and the Cemetery Association is a subsidiary of the holding company and derives all of its authority from the holding company, and the alleged trust funds which it holds constitutes a contract or agreement as between the two companies for their mutual protection and benefit. We do not think, however, that the facts and circumstances of this case brings it within the category of a charitable or non-profit corporation so as to relieve the fund of liability for tort for the satisfaction of a judgment obtained against it for the benefit of a third party. Since it is not denied that the Cemetery Company owns all the lots in the cemetery and is engaged in the business of selling the lots and grave sites to the public and collecting and receiving money therefor, although its associate or subsidiary company, the Cemetery Association, has charge of that phase of the business, it is at once obvious that the interest of the two companies are so interrelated that no legal distinction as to their liabilities can be drawn when dealing with third parties, and therefore, under the circumstances and proven facts of this case, the act of one was the act of the other. It results, therefore, that it is not material whether the acts upon which plaintiff bases his action were committed directly by the

Cemetery Company through and by its employees, or whether it was committed by Mr. Vogt as representative of the Cemetery Association, since, as we have noted above, the interrelated, joint, and mutual interest of the two companies are such as to make the acting party the agent of the other party.

Finding no error prejudicial to the substantial rights of the defendants, the judgment is affirmed.