**Albert CRAFT and Irene Craft,
Movants,**

v.

**Roy RICE, Ashland Oil, Inc., and Ashland Coal, Inc., A Subsidiary of Ashland Oil, Inc., Respondents.**

Supreme Court of Kentucky.

June 14, 1984.

Garis L. Pruitt, Ashland, for movants.

David O. Welch, Welch, McDermott & Purdom, Ashland, Michael J. Farrell, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., for respondents.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed the trial court's directed verdict for the defendants based on a one-year statute of limitations.

The Court of Appeals affirmed the dismissal of the case because it reasoned that the action was one for personal injury and governed by the one-year limitation.

The crucial issue is whether KRS 413.-120(7), the five-year statute of limitations for an action for an injury "not arising on contract and not otherwise enumerated" applies to this situation rather than the one-year limit of KRS 413.140(1)(a) for injury "to the person of the plaintiff." The question involves the gravamen of the tort where there has been an intentional interference with a person's rights.

Albert and Irene Craft were husband and wife and lived in the Ashland Coal weighmaster's house where Albert worked weighing coal and coal trucks. He was indicted for second-degree forgery for allegedly falsifying weigh tickets. Ultimately he was acquitted. From May to July of 1978, Rice, a former Boyd County Sheriff, allegedly harassed Irene Craft by keeping her under surveillance at work and home, telling her over the CB radio that he would put her husband in jail and driving so as to force her vehicle into an opposing lane of traffic. It is claimed that Rice also used the CB radio to talk to Albert Craft who complained of resulting mental anguish. Irene Craft's complaints included chronic diarrhea, colitis and a nervous condition as well as mental anguish. It is undisputed that no touching occurred to either plaintiff.

The Crafts filed their suit more than one year after the last alleged act of harassment. They contend that the trial court and the Court of Appeals erred in deciding that the one-year statute of limitations applied to their situation.

The Court of Appeals affirmed the trial court's directed verdict based on the one-year statute of limitations because the trial court had characterized the cause of action as one for personal injury under the authority of *Carr v. Texas Eastern Transmission Corp.*, Ky., 344 S.W.2d 619 (1961), and *Columbus Mining v. Walker*, Ky., 271 S.W.2d 276 (1954).

This Court reverses the decision of the Court of Appeals and the circuit court because the five-year statute of limitations applies when the gist of the tort is the claimed interference with the plaintiff's rights causing emotional distress generating a cause of action regardless of whether the plaintiff suffers any bodily harm resulting from the emotional distress.

■ The basis of the cause of action is intentional interference with the plaintiff's rights causing emotional distress, with or without personal injury in the traditional sense. If there has been physical injury with pain to the body or mind, it is incidental to the emotional distress rather than essential to the cause of action as is the case in an action for personal injury. The plaintiff may have a cause of action for emotional distress from the intentional and unlawful interference with her rights, regardless of whether she suffers any bodily injury from such interference.

If we use the object vs. form test set out in *Carr, supra,* to decide what right is protected, it would be the right to be free from harassment intentionally invading the plaintiff's rights and causing emotional distress, with or without personal injury. Consequently the decision in *Resthaven Memorial Cemetery v. Volk,* 286 Ky. 291, 150 S.W.2d 908 (1941), applies, and the five-year statute of limitations is proper because it relates to the interference with a right not otherwise enumerated in the limitation statute. In *Resthaven, supra,* the recovery was permitted for mental anguish without a touching where a deceased was disinterred and reburied without notice to the family. The Crafts analogize the right of the relatives to be notified of their right to be left alone, free from harassment. The five-year statute was also applied in a later grave desecration case, *Fergerson v. Utilities Elkhorn Coal Co.,* Ky., 313 S.W.2d 395 (1958).

There is an absence of definitive authorities for this particular situation. It is difficult to precisely label the tortious conduct presented here. An analysis of some other jurisdictions may be helpful in reviewing this question. In *Moore v. Allied Chemical Corp.,* 480 F.Supp. 364 (E.D.Va.1979), the State of Virginia recognized such a tort, even when unaccompanied by physical injuries, when the following elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe. *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974).

In the case of *Campos v. Oldsmobile Div., General Motors Corp.,* 71 Mich.App. 23, 246 N.W.2d 352 (1976), the Michigan court was faced with a problem similar to the one this Court faces. The plaintiff brought suit alleging that while an employee of defendant, he was wrongfully accused of criminal activity, i.e., the possession of marijuana. The circuit court dismissed the action holding that the one-year slander statute of limitations barred the action. The Michigan Court of Appeals distinguished between a slander action which involved damage to reputation and an action for intentional infliction of emotional distress which protected a person's right to be free from serious, intentional and unprivileged invasions of mental and emotional tranquility. Citing 38 Am. Jur.2d, *Fright, Shock and Mental Disturbance,* § 4, at 6.

It held that the relevant section of the Michigan statute was a limitation of three years for all other actions to recover damages for injuries to persons and property. M.S.A. § 27A.5805(7) [M.C.L.A. § 600.-5805(7) ]. The Michigan court applied the

longer statute stating that the type of interest which was allegedly injured is sufficiently different to warrant application of the longer period. *See Campos, supra,* 246 N.W.2d at 354. The Michigan Court of Appeals followed this holding in *Mosley v. Federals Dept. Store, Inc.,* 85 Mich.App. 333, 271 N.W.2d 224 (1978).

The Supreme Court of North Carolina, noting that no statute of limitations addresses the tort of intentional infliction of mental distress by name, indicated that it must be governed by the more liberal three-year limitation, G.S. 1–52(5), which applies to "any other injury to the person or rights of another not arising on contract and not hereafter enumerated." *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1981). The court goes on to point out that even if they had substantial doubt about which statute of limitations applies, the rule would be that the longer statute is to be selected. 51 Am.Jur.2d, *Limitation of Actions,* § 63 (1970).

It should be noted that the North Carolina statute quoted above is worded very similar and almost identical to the Kentucky five-year statute, KRS 413.120(7).

It appears that there is no specific authority in our jurisdiction as to what statute of limitations governs the tort of outrageous conduct causing severe emotional distress described in *Restatement (Second) of Torts* § 46. Indeed such a tort has not been expressly recognized in Kentucky heretofore.

The nearest applicable cases in our jurisdiction appear to be the "grave desecration" cases, i.e., *Resthaven Memorial Cemetery v. Volk,* 286 Ky. 291, 150 S.W.2d 908 (1941) and *Fergerson v. Utilities Elkhorn Coal Co.,* Ky., 313 S.W.2d 395 (1958). In *Resthaven, supra,* this Court held that "injury to the person," within the statute requiring an action for an injury to the person be brought within one year after accrual of right, refers to those cases where personal injury is the gist of the action such as actions for assault and battery and the like. Ky.Stat., § 2516, the forerunner to KRS 413.140.

The jurisdictions are not unified as to what statute of limitations to apply. *See Murphy v. Allstate Ins. Co.,* 83 Cal.App.3d 38, 147 Cal.Rptr. 565 (1978); *Campos, supra; Dickens v. Puryear, supra; Moore v. Allied Chemical Corp., supra.*

The disparity in these decisions in the various jurisdictions appears to be a result of the difference in wording in the states' statutes of limitations as well as differences of opinion as to how to characterize the tort.

North Carolina recognized the tort of intentional infliction of mental distress in *Stanback v. Stanback,* 297 N.C. 181, 254 S.E.2d 611 (1979). The case held that liability arises under this tort when a defendant's conduct exceeds all bounds usually tolerated by decent society and the conduct causes mental distress of a very serious kind. W. Prosser, *Torts* § 12, p. 56. This seems to fit our fact pattern.

Kentucky has previously recognized a cause of action for tortious conduct in cases involving humiliating methods of debt collection, *Brents v. Morgan,* 221 Ky. 765, 299 S.W. 967 (1927), embarrassment caused by an employer's methods in combatting union organization, *Wheeler v. P. Sorensen Mfg. Co.,* Ky., 415 S.W.2d 582 (1967), and a newspaper's liability for putting a private person in "false light," *McCall v. Courier Journal,* Ky., 623 S.W.2d 882 (1981). While we cannot completely correlate the behavior in question here with the behavior in those cases involving the invasion of privacy, or with the definition of invasion of privacy in *Restatement (Second) of Torts* § 6.52A, the similarity is significant.

The conduct alleged here is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community. It qualifies as harassment intended to cause extreme emotional distress. The Crafts had a right to be left alone. The criminal law prohibits harassment in KRS 525.070, and a corresponding tort should also be available.

■ We adopt the *Restatement (Second) of Torts* § 46, the following:

"§ 46. Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

There is a right to be free of emotional distress arising from conduct by another. Because the essence of the tort is the interference with this right and not whether any bodily harm results, the five-year statute of limitations applies.

The decision of the Court of Appeals is reversed. This matter is remanded to the circuit court for trial as an intentional interference with the rights of the Crafts to be free of emotional distress arising from an intentional interference with their rights.

STEPHENS, C.J., and GANT, LEIBSON and WINTERSHEIMER, JJ., concur.

STEPHENSON, J., dissents by separate opinion.

AKER, J., joins in his dissent.

VANCE, J., not sitting.

STEPHENSON, Justice, dissenting.

In my opinion the trial court and the Court of Appeals are exactly right in applying the one-year statute of limitation to this case. The "gist of the action" here is personal injury, and the "grave desecration" cases simply do not stand scrutiny as authority for utilizing the five-year statute of limitation.

If the majority opinion is any indication, almost any insulting activity will be cause for a lawsuit for the test of "outrageous conduct."

The Comments to § 46 describe the conduct which gives rise to the cause of action:

"d. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct had been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intollerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. ...."

I am of the opinion it is a mistake to adopt § 46 of the *Restatement*. I predict the majority opinion will give rise to a spate of frivolous lawsuits. I cannot think of a more dismal case to use in adopting § 46 of the *Restatement (Second), Torts*. The majority opinion blithely sends the case back to the trial court for a new trial as to all parties without regard to the evidence.

The opinion neglects to recognize that the respondents made a motion for a directed verdict at the close of movants' testimony, also on the ground of insufficient evidence. It has long been the law in this Commonwealth that even if a verdict was directed on an erroneous theory, if the parties were entitled to a directed verdict on other grounds, the erroneous theory is immaterial and the directed verdict shall stand. *Slusher v. Brown*, Ky., 323 S.W.2d 870 (1959). First, movants' counsel agreed that the allegation of conspiracy to indict Albert Craft should be dismissed. Secondly, as the Court of Appeals' opinion stated the complaints by Albert Craft are trivial. Albert Craft's testimony was that Roy Rice over a citizens band radio stated, "well here comes Sleepy. He said how are you

and your lawyer doing getting a warrant for me?" Albert Craft testified, "well it's pretty well upset me and I've never been the same person." Furthermore, he testified that he stayed "pretty well tore up and I'm ashamed to go in public." Craft further testified that Rice, over the CB radio, on one occasion stated, "well there's Sleepy said I'm going to see that he goes to the penitentiary before this year is out." There is nothing said that this upset Albert Craft in any way. By any test, this does not constitute "outrageous conduct," but is a frivolous complaint, and the respondents were entitled to the directed verdict on the ground of insufficient evidence. This should remove Albert Craft from the case.

As to the balance of the case, it is pretty vague. Irene Craft testified that unknown persons kept her under surveillance for about two weeks. Her witness on this point testified these people were employees of Ashland Coal and were observing the company coal dock. He testified they could not see the Craft house unless they went outside the building. The record does not reveal the reason for the people observing the coal dock. Irene Craft testified these people were watching her house. This activity continued until two employees of Ashland Coal appear before the grand jury which indicted Albert Craft for forgery in the second degree.

The medical testimony revealed a complaint by Irene Craft to her doctor that she was receiving anonymous phone calls and that this made her nervous. She complained at trial of losing her hair, but did not mention this to her doctor.

During this period, Albert Craft, a former employee of Ashland Coal, was under indictment for allegedly forging a coal truck weigh ticket. He was later found not guilty. I infer that this indictment is the principal complaint of Albert Craft and surely was a major part of Irene Craft's nervous condition.

The allegation that Roy Rice is an employee of Ashland Coal and committed the complained acts during the course of his employment is not sustained by the evidence. I cannot find anywhere in the record proof that Rice was acting within the scope of his employment in committing the alleged acts. There is nothing in the evidence to show any involvement by Ashland Oil.

In reading the Commentary to § 46 of *Restatement (Second), Torts* as to the quality of proof needed, I would seriously suggest a directed verdict if the evidence at the new trial is the same as portrayed in this record, and the directed verdict should surely stand as to Albert Craft, Ashland Oil, and Ashland Coal.

I therefore dissent.

AKER, J., joins this dissent.