RENDERED: OCTOBER 24, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0930-MR

SUSAN CROWDER                                               APPELLANT


               APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE JULIE KAELIN, JUDGE
                    ACTION NO. 22-CI-003569


MARVIN YUSSMAN, M.D.                             APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND ECKERLE, JUDGES.

ECKERLE, JUDGE: Appellant, Susan Crowder ("Crowder"), seeks reversal of the Jefferson Circuit Court's Order granting summary judgment in favor of Appellee, Marvin Yussman, M.D. ("Yussman"). This Court, having been fully briefed, giving careful consideration, and hearing oral arguments on September 11, 2025, hereby affirms the Jefferson Circuit Court's Order.

# FACTUAL AND PROCEDURAL BACKGROUND

The factual chronicle of Crowder's suit began in 1975, when she sought medical treatment from Yussman to become pregnant. Yussman served as a physician and faculty member at Louisville General Hospital, specializing in assisted reproduction. After consulting with Yussman, Crowder and her husband consented to Yussman performing an intrauterine insemination procedure using donated sperm from a confidential donor. The only material contested fact concerns whether Yussman obtained Crowder's consent to serve as her sperm donor. Crowder maintains that she consented to the use of a confidential sperm donor who was to be a medical student, resembling physical traits of her husband, who was the intended non-biological father of the offspring. Crowder remembers signing paperwork but is unable to recall the substance contained therein. Yussman, however, testified that Crowder signed an informed consent form detailing that the confidential donor would be a medical or dental student, a medical resident, or a faculty member. The parties were unable to obtain the actual informed consent form during the discovery process, as it is no longer available. There is no other factual quarrel at issue.

Yussman testified that in April of 1975, on the date of the procedure, the scheduled donor was unavailable. Yussman admits that he utilized his own sperm to inseminate Crowder. Yussman also admits that he did not reveal this fact

to Crowder. In fact, Yussman testified that he served as a sperm donor on numerous occasions where the scheduled donor did not appear, and he satisfied the donor profile requirements. Yussman testified that he has fathered other children by this method.

The procedure resulted in Crowder becoming pregnant and birthing a daughter in March of 1976. It was not until 40 years later, in April of 2019, that Crowder discovered that Yussman is her daughter's biological father following that daughter's use of commercial genetic testing.[1]

On July 14, 2022, over three years after this discovery, Crowder commenced suit against Yussman and the University of Louisville Hospital, which was formally known as Louisville General Hospital and University Medical Center, Inc. (collectively, "Hospital"). The following month, in August of 2022, Crowder amended her complaint to allege that Yussman and the Hospital committed the following causes of action: (Count I) fertility fraud pursuant to Kentucky's Fertility Fraud Act (the "KFFA"), Kentucky Revised Statute ("KRS") 311.373; (Count II) medical malpractice; (Count III) breach of contract; (Count IV) failure to obtain informed consent; (Count V) common-law fraud; (Count VI)

---

[1] Crowder alleges that Yussman "fathered at least eight other children through similar practices with his patients." Appellant Brief, p. 1-2.

-3-

battery; (Count VII) negligent infliction of emotional distress; and (Count VIII) punitive damages.[2]

Yussman and Hospital moved the Trial Court to dismiss Crowder's amended complaint pursuant to CR 12.02. Yussman argued that Crowder cannot seek redress under the KFFA, as the statute only operates prospectively. Yussman also argued that Crowder's remaining claims are time-barred, or in the alternative, fail to state a cause of action upon which relief may be granted.

Crowder filed a response in opposition, highlighting the rigorous dismissal standard in addition to an alleged need for discovery in order to provide a specific basis for her claims. Substantively, Crowder argued that the General Assembly intended for the KFFA to apply retroactively to her claims against Yussman. Regarding Yussman's arguments that the relevant limitations periods had expired, Crowder argued that her medical negligence claim was not cognizable until the General Assembly's enactment of the KFFA. Said differently, Yussman argued that there was no cause of action for fraudulent assisted reproduction; thus, Yussman's conduct did not violate any standard of care to support a claim of medical negligence prior to the General Assembly's passage of the KFFA. As for

---

[2] Crowder also sought injunctive relief pursuant to Kentucky Rule of Civil Procedure ("CR") 65.04, requesting that Yussman provide information necessary to identify each patient he artificially inseminated. The Trial Court disposed of Crowder's claim on December 27, 2022, ruling that absent sworn expert testimony, it cannot provide equitable relief in the form of a mandatory injunction.

her remaining claims, Crowder argued that the Trial Court must equitably estop Yussman from benefiting from his deceitful conduct. Ultimately, Crowder requested the Trial Court apply "equitable estoppel tolling the state of the statute of limitations until the conduct was actually discovered." Trial Record ("TR"), p. 166.

In December of 2022, on his final day of presiding over Jefferson Circuit Court, Judge Charles L. Cunningham, Jr., denied Yussman's and Hospital's motions. The Trial Court's order explained that it would not address Yussman's arguments regarding the viability or timeliness of Crowder's individual claims. Instead, the Trial Court ruled that further discovery was necessary for the parties to evaluate whether Crowder's claims amounted to an unrecognized tort based on the KFFA, which the Trial Court titled "common law civil fertility fraud." TR, p. 181. The Trial Court's analysis relied heavily on *Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984), a case in which the Kentucky Supreme Court adopted a new tort, termed "Outrageous Conduct Causing Severe Emotional Distress. . . ." *Id.* at 251. Based on *Craft* and its reasoning, the Trial Court ruled that "it is compelled . . . to allow a common law civil fertility fraud cause of action to proceed to the discovery phase." TR, p. 183. Under this newly-fashioned cause of action, the Trial Court explicitly stated that a five-year statute of limitations period mirroring the KFFA applied, commencing upon the date of Crowder's discovery of the harm, April of 2019.

The Trial Court's order concluded by encouraging the parties to consider the KFFA when exploring potential resolution outside of the Courtroom setting. Notably, the Trial Court did not rule on whether the KFFA may be retroactively applied to Crowder's claims, whether Crowder's common-law claims were time-barred, or whether Yussman was equitably estopped from asserting statute of limitations defenses.

Subsequently, in February of 2023, Crowder and Hospital stipulated and submitted an agreed order dismissing the action with prejudice, which the newly-sitting Circuit Court Judge summarily granted. Yussman, the remaining defendant, filed his answer affirmatively pleading, *inter alia*, Crowder's claims are time-barred. On June 6, 2024, following the completion of written and oral discovery, Yussman filed the underlying motion for summary judgment. He recited pertinent procedural history and the applicable standard of review. Yussman asserted one material fact in dispute: whether Yussman told Crowder that a faculty member – such as himself – may serve as the donor. Yussman's arguments remained the same as those asserted in his motion to dismiss, including that the KFFA does not retroactively apply to Crowder's claim; Crowder's remaining claims are time-barred; and, even assuming Crowder timely filed her claims, she cannot prevail on the merits. Crowder's response reiterated her previous arguments that the General Assembly intended that the KFFA provide

historical victims, such as herself, with a cause of action via retroactive application. Crowder also attempted to raise questions of fact, which, while apparently genuine, were not also material to the cause of actions she asserted. Notably, and as we discuss further herein, Crowder's response neither refuted nor addressed Yussman's argument that her common-law claims are barred by the applicable statutes of limitation.

By Order dated July 15, 2024, the Trial Court granted Yussman summary judgment on all counts and dismissed Crowder's action. To begin, the Trial Court found that Crowder's alleged harm occurred in 1975 but was not discovered until April of 2019. Based on Crowder's suit commencement in July of 2022, the Trial Court quickly disposed of Crowder's allegations of medical negligence, failure to obtain informed consent, battery, and negligent infliction of emotional distress due to the applicable one-year statute of limitations periods for those causes of action. Similarly, the Trial Court barred Crowder's allegations of breach of contract and common-law fraud due to the 15-year and ten-year statutes of limitations, respectively.

Regarding Crowder's sole remaining count alleging a violation of the KFFA, the Trial Court declined Crowder's request to apply the statute absent retroactive language. Accordingly, the Trial Court granted Yussman summary

judgment on all counts of Crowder's amended complaint. It is from this Order that Crowder appeals.

Crowder seeks review challenging the Trial Court's determination that the KFFA does not enjoy retroactive application covering Yussman's conduct, which occurred in 1975. Crowder also contests the Trial Court's summary judgment as to her remaining common-law causes of action. Crowder further argues that Yussman is equitably estopped from obtaining judgment based on grounds that the applicable statutes of limitation have lapsed.

## STANDARD OF REVIEW

Summary judgment is governed by CR 56.03, stating that "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating a party's entitlement to summary judgment, a Trial Court must view the record in the light most favorable to the nonmoving party. *Steelvest, Inc. v. Scansteel Service Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). If it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in her favor, then summary judgment is proper. *Id* (citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985)) (stating that summary judgment "is only proper where the movant shows that the adverse party

could not prevail under any circumstances"). To combat summary judgment, the opposing party must present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482.

Here, both parties agree that this Court's review is *de novo*. *See Bruner v. Cooper*, 677 S.W.3d 252, 269 (Ky. 2023) (footnote omitted) ("Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.").

## ANALYSIS

### I. Kentucky Rules of Appellate Procedure

As an initial matter, we must address the submission of false authority to this Court by Crowder's counsel. Specifically, in Crowder's Appellant Brief, argument titled "Fertility fraud cases are distinguishable from *Thompson v. Killary*," counsel cites the three following cases as precedential authority: *Schooley v. Kennedy*, 712 S.W.2d 941 (Ky. 1986); *Salzman v. Atwood*, 65 S.W.3d 496 (Ky. App. 2001), and *Middleton v. Middleton*, 287 S.W.2d 427 (Ky. 1956). Appellant Brief, p. 12-13. Yussman's Appellee Brief points out the fact that these cases do not exist.

In response, Crowder's counsel acknowledges the errors – which she refers to as "citation errors." Appellant Reply Brief, p. 1. However, Crowder's counsel fails to provide this Court with any *written* explanation or excuse as to how or why she included three non-existent cases in Crowder's Appellant Brief. Appellant Reply Brief, p. 1. In fact, it was not until this Court questioned Crowder's counsel at oral arguments that she attributed her oversight to what she referred to as placeholder citations. As Crowder's counsel declared before this Court at oral argument, she and/or her staff created three distinct, imaginary cases as placeholder citations, which she intended to replace with actual precedential or persuasive authorities. Despite her intentions, Crowder's counsel provided this Court with fictious authority in violation of Kentucky Rules of Appellate Procedure ("RAP") 31(E)(1) and 32(A)(4). The former Rule includes strict citation requirements, and the latter Rule requires a submitted argument to contain "ample . . . citations of authority pertinent to each issue of law[.]"

This Court has the discretion to determine the appropriate penalty for failure to follow its rules. *St. Joseph Catholic Orphan Soc'y v. Edwards*, 449 S.W.3d 727, 732 (Ky. 2014). Pursuant to Rule 10(B)(3), this Court may strike an offending brief or portions thereof. While this Court does not intend to punish Crowder for her lawyer's mistakes, our treatment of counsel's submission of what can only be described as invented law must be met with consequences. Therefore,

we find it appropriate to strike the offending portions of Crowder's Appellant Brief, Section C, pages 11-15.

Moreover, we take this opportunity to caution practitioners of this Commonwealth on the submission of briefs or citations without confirming their accuracy and the correctness of the resulting analysis. The abject failure to conduct due diligence when making arguments to the Court greatly impacts the profession and undermines confidence in the skills and knowledge necessary to practice as an attorney. Failure to verify substantive legal citations prior to submission to this Court is not only in derogation of the RAP, but also violates the attorney's ethical responsibilities. *See* Supreme Court Rule 3.130(1.1).

Mistakes occur. Oversights happen. Those types of inadvertent errors we could absolve. However, purposelessly submitting a brief to a Court of law without confirming that the cited case law even exists is an affront to the dignity of the Court system, the legal profession as a whole, the judiciary, the client, and the public at large. But for now, let us turn to the merits of the controversy that brings us here.

## II.    Prospective Application of the KFFS

Crowder's first substantive argument concerns whether the KFFS can be applied retroactively to afford her relief. As the Trial Court and both parties properly identified, KRS 446.080(3) prohibits the retroactive application of a

statute absent express legislative authority ("No statute shall be construed to be retroactive, unless expressly so declared."). Kentucky law presumes that statutes are enacted to operate prospectively. *See, e.g.*, *Jewish Hospital v. Perry*, 626 S.W.3d 509, 513 (Ky. 2021). Indeed, it is well-established law that retroactive application of a law must be either expressly afforded within the text of the law or established by the General Assembly. *Baker v. Fletcher*, 204 S.W.3d 589, 597 (Ky. 2006). The reasoning behind the presumption of prospective application of a newly-enacted statute is a matter of fairness. *See Martin v. Warrior Coal L.L.C.*, 617 S.W.3d 391, 394 (Ky. 2021) ("[C]onduct should ordinarily be assessed under the law that existed when the conduct took place.").

As with most principles of law, the rule is not absolute. For example, the rule against retroactive application does not necessarily apply to statutory amendments that provide "remedies or modes of procedure," as opposed to "substantive rights." *Commonwealth Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000).

Ultimately, our goal is to discern the General Assembly's intent. Accordingly, we begin with the language of the KFFA while keeping in mind that the General Assembly is not required to use "magic words" indicating its intent that a statute should apply retroactively. *Perry*, 626 S.W.3d at 513.

On July 1, 2022, the Kentucky General Assembly enacted KRS 311.373, entitled "Definitions; fraudulent assisted reproduction; cause of action, damages, statutes of limitations; penalty." The KFFA states, in pertinent part, the following:

> (2) A person is guilty of fraudulent assisted reproduction when he or she is a health care provider performing an assisted reproduction procedure on a patient and:
>
> > (a) Knowingly causes the use of human reproductive material from a donor whom the patient did not give written consent to receive it from; or
> >
> > (b) Intentionally causes the use of his or her own human reproductive material without the patient's knowledge and written consent.
>
> (3)(a) The patient who undergoes an assisted reproduction procedure in violation of subsection (2) . . . shall have a civil cause of action against any health care provider, the health care provider's employer, or both, for a violation of the provisions of subsection (2) of this section.
>
> (4) A civil action may be maintained under this section whether or not the person alleged to have violated subsection (2) of this section has been charged or convicted of the alleged crime.
>
> (5) Liability under this section shall include:
>
> > (a) Liquidated damages of ten thousand dollars ($10,000) plus the costs of the fertility treatment and reasonable attorney's fees; or

-13-

(b) Compensatory and punitive damages including the costs of the fertility treatment plus the costs of the action and reasonable attorney's fees.

(6) An action under this section shall be commenced no later than five (5) years after:

(a) The eighteenth birthday of the child conceived through the fraudulent assisted reproduction; or

(b) The earliest of the dates when:

1. The person first discovers evidence against the defendant through deoxyribonucleic acid (DNA) analysis;

2. The person first becomes aware of the existence of a record that provides evidence against the defendant; or

3. The defendant confesses to the offense.

(7) A violation of subsection (2) of this section is a Class D felony.

From the outset, it is clear that the KFFA does not expressly provide for retroactive application. Generally, our analysis would end here. *See Thompson v. Killary*, 683 S.W.3d 641, 646 (Ky. 2024) (quoting in part *University of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017)) ("In determining the meaning of a statute, 'we . . . look first to the plain language of a statute and, if the language is clear, our inquiry ends.'"). However, our jurisprudence requires further inspection, as the General Assembly is not required to use "magic words" if the "enactment make[s] it apparent that retroactivity was the intended

result." *Baker*, 204 S.W.3d at 597; *see Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 167 (Ky. 2009), *as corrected* (Jan. 4, 2010) ("[A] failure to state explicitly that legislation is to apply retroactively does not always mean that a court may not determine that the legislation has retroactive effect.").

The question before the Court, then, is whether the General Assembly intended for the KFFA to have retroactive application to account for fertility fraud predating its 2024 enactment even though it expressly failed to provide for any such retroactivity explicitly. In this regard, Crowder supplies several arguments for retroactive application of the KFFA.

We begin with Crowder's most compelling argument that the lack of an express provision providing retroactive application is not dispositive of the issue. Specifically, Crowder argues that the KFFA's legislative history demonstrates the General Assembly's intention that the statute apply retroactively. Crowder submits statements from Kentucky House Representative Frazier Gordon, wherein he introduced the underlying bill, House Bill 402. Specifically, Crowder points to Gordon's statements illustrating fertility fraud in a manner factually identical to her situation, and the need for the harmed individuals to hold the physicians accountable.

-15-

To evaluate the KFFA's history fairly, we quote Gordon's statements in their entirety. Specifically, Gordon recited the following language during the bill's reading on March 9, 2022:

> Mr. Speaker, House Bill 402 relates to fertility fraud deception, whereby a physician made the decision decades ago to use a fresh sample of his own material to inseminate female patients but would inform them that the sample would come from the woman's own husband or anonymous donor. The deception is then discovered decades later when the adult child conceived through this procedure learns through [direct-to-consumer DNA testing] of kinship relations through the doctor's relatives or half sibling groups. Dozens of cases have emerged all over the United States and before you think this can't happen here, we have two well-known cases in Kentucky.
>
> Federal regulations and professional guidelines have proliferated in this area of medicine; therefore, it is unlikely that physicians will commit similar acts today. Patients affected by fertility fraud should be able to seek accountability from the physicians who harmed them. Without legislation, the existence of remedies, their extent, and their coverage are mostly uncertain. This legislation creates both civil and criminal causes of action for fertility fraud. It establishes a longer time period to sue following discovery, allows children and partners to sue, as well as offers a liquidated damages option. This legislation obviates the need for courts to wrangle with how to characterize its conduct and civil consequences.

These lone statements from a single legislator do not imply that the General Assembly intended for the KFFA to apply retroactively. At most, we could infer that with the advent of readily available consumer DNA testing, and upon reports

-16-

of salacious conduct such as that which occurred in the case *sub judice*, legislators aimed to create a unique cause of action going beyond mere common-law fraud. Regardless of whether Yussman's actions directly precipitated the enactment of the KFFA, Gordon's statements do not surmount the General Assembly's failure to include express retroactive language when it could easily have done so if it had wanted.

In addition, Crowder argues unpersuasively that we should extrapolate legislative intent based on Gordon's above-quoted statement that physicians would not commit such acts in present times. Crowder submits that Gordon's statements stand for the proposition that "without retroactive application, there would be no reason for [the KFFA] to exist at all, as there [would] be nothing [for] the statute to prohibit." Appellant Brief, p. 8.

First of course, it is naïve to think that no physician would ever attempt to perpetrate this kind of violation in the future. Second, Crowder's construal of Gordon's statements is one based on the statute's purpose and is farfetched. In practical application, and based on Gordon's own words, the KFFA aims to define conduct constituting fertility fraud, deter such conduct through civil and criminal liability, and provide a clear path for those harmed to seek redress. Retroactive application of the KFFA does not further these goals. The past conduct was clearly not deterred. Third, when read in the context of his entire

statement, Gordon's single quoted phrase clearly refers to the fertility industry's contemporary professional standards. This statement does not mean that fertility fraud will not occur; rather, now victims have a new, arguably better avenue of relief. Prior to its enactment, and as the Trial Court made clear, Crowder and similarly-situated victims were free to seek common-law causes of action with varying statutes of limitations.

In sum, in the face of the clear language of the statute that contains no retroactive application, Gordon's statements cannot overcome the required legal presumption of prospective application. *See Mills v. Department of Corrections Offender Info. Servs.*, 438 S.W.3d 328, 335 (Ky. 2014) ("Resorting to excerpts of commentary by a single legislator, no matter his rank, makes little sense in light of the fact that the General Assembly spoke as a body in enacting the legislation as it currently stands."). The simple fact is that the legislature could have made the statute retroactive; but for whatever reason, they chose not to do so. And the legislature makes the laws; the Courts do not.

Crowder also suggests that the limitations period demonstrates the General Assembly's intent that the KFFA apply to claims predating its enactment. Specifically, Section (6) provides the harmed individual with a limitations period of five years from: (A) the child turning 18 years of age; or the earlier of (B) discovery through DNA testing, (C) discovery through records; or (3) the

-18-

defendant confesses. KRS 311.373(6). Based on this language, Crowder makes a fair inference that the General Assembly intended for historical victims to assess and assert a civil cause of action against a medical provider who perpetrated fertility fraud. *C.f.* KRS 413.140 (personal injury lawsuits generally fall within the one-year statute of limitations requiring the action to be "commenced within one (1) year after the cause of action accrued"). Despite the KFFA's expanded five-year limitations period, we still find no compelling reason to equate the language to an expression of the General Assembly that the KFFA's reach applies to conduct occurring prior to its enactment. *See Martin*, 617 S.W.3d at 396. In sum, we cannot supply language where there was none.

This reasoning holds true for Crowder's additional argument that the legislature's decision to place a five-year limitations period from discovery through the use of DNA testing would be rendered meaningless absent retroactive application because "current medical regulations and ethical guidelines" render fertility fraud "virtually impossible [to commit] today." Appellant Brief, p. 9. Crowder does not expound on her contention beyond generalized statements. We have seen no supporting information or explanation indicating that a physician is unable – or even less likely – to commit fertility fraud in its various forms if he or she is so inclined. Accordingly, we reject Crowder's argument. Section (6)(b)1. simply sets forth a limitation period based on the *method* of discovering the harm –

*e.g.*, DNA testing, other records, or physician confession. The DNA method of catching a criminal is relatively new; the predisposition to commit such a crime is not – even in the face of novel crime-fighting techniques.

Finally, Crowder supplies the Court with a public policy argument that Yussman's actions constitute the exact type of conduct the KFFA was created to prevent. This Court has no qualm with Crowder's proposition. The legislative history is clear that the General Assembly took action based on an identical (if not the same) factual pattern. However, and even still, the General Assembly did not provide any indication that it intended for the KFFA to apply retroactively, and it took no steps to include retroactive language. While we are not unsympathetic to Crowder's plight, this Court cannot usurp the General Assembly's role of legislating. *See Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) ("In fact, '[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source.'" (quoting RONALD BENTON BROWN & SHARON JACOBS BROWN, STATUTORY INTERPRETATION: THE SEARCH FOR LEGISLATIVE INTENT § 4.2, at 38 (NITA 2002))).

In fact, in this Court's independent survey of similarly enacted statutes, we have located an array of fertility fraud legislation, some of which includes express retroactive language. In Illinois, for example, its fertility fraud act

explicitly provides the "Act shall be retroactive and apply to any treatment by a health care provider occurring prior to the effective date of this Act." 815 Ill. Comp. Stat. § 540/5 (2024). On the other end of the spectrum is Colorado's fertility fraud act, which expressly states that it operates prospectively, not retroactively. 2020 Colo. Sess. Laws ch. 238, § 7(2) ("This act applies to causes of action arising or offenses committed on or after the applicable effective date of this act."). Iowa's fertility fraud statute is perhaps most comparable to the KFFA, as Iowa's legislature did not mention retrospective application in any manner. *See* Iowa Code § 709.4A (2023). There, the Supreme Court of Iowa held that absent legislative intent to the contrary, its fertility fraud act cannot be applied retroactively. *Miller v. Iowa*, 18 N.W.3d 498, 506 (Iowa 2025) (juxtaposing other recent laws wherein the legislature expressed its intent for the statute to apply retrospectively).

We must also underscore that prospective application of the KFFA does not limit historical victims from seeking relief via other causes of actions predating the KFFA. Of course, as evident here, the cause of action must be asserted within the applicable limitations period. For example, upon Crowder's discovery of the harm in 2019, she could have brought suit then against Yussman under her other causes of action.

### III.    Crowder's Common-Law Causes of Action

We must also address the Trial Court's determination that Crowder's remaining claims are time-barred. *EQT Production Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275 (Ky. App. 2019) ("When the relevant facts are not in dispute, the Court may determine the validity of a statute of limitations defense as a matter of law."). There is no factual dispute that Crowder suffered the complained-of harm in 1975, discovered the harm in April of 2019, and brought suit against Yussman in July of 2022.

Pursuant to KRS 413.140(1)(e), Crowder's medical negligence (Count II), failure to obtain informed consent (Count IV), battery (Count VI), and intentional infliction of emotional distress (Count VII) are subject to a one-year limitations period commencing upon the accrual of the subject causes of action. On this issue, a cause of action under KRS 413.140(1)(e) accrues upon "discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000). Consequently, the Trial Court's judgment in favor of Yussman on Crowder's claims of medical malpractice, informed consent, battery, and negligent infliction of emotional distress was proper because Crowder did not commence those causes of action within one year of discovery. Construing the facts in a light most favorable to Crowder, the discovery rule reserved accrual of Crowder's

claims until April of 2019, upon her discovery that Yussman is the biological father of her daughter. Thus, the limitations period expired for these claims in April of 2020. Crowder did not file suit until July of 2022. Accordingly, we find no error in the Trial Court's judgment as to Counts II, IV, VI, and VII.

Likewise, the Trial Court did not commit error in awarding Yussman judgment on Crowder's remaining three claims, breach of contract (Count III), common-law fraud (V), and punitive damages (Count VIII). Regarding Count III, breach of contract, KRS 413.190(2) enumerates a 15-year limitations period for written contracts. "A breach of contract action is said to ripen or accrue at the time of its breach – that is, the date of the 'promised performance.'" *Cornett v. Student Loan Solutions, L.L.C.*, 672 S.W.3d 852, 857 (Ky. App. 2023) (quoting *Finley v. Thomas*, 107 S.W.2d 287, 288 (Ky. 1937)). Without supplying any precedential authority, Crowder claims that the discovery rule applied to her breach of contract claim. A review of our precedential authority, however, demonstrates that an action for breach of contract accrues upon breach, not when damages are suffered or realized. *See, e.g.*, *EQT Production*, 590 S.W.3d at 293; *Hoskins' Adm'r v. Kentucky Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky. 1957). Accordingly, we agree with the Trial Court that Crowder's 2022 breach of contract claim is time-barred because the procedure and contract occurred on or about April of 1975.

Moreover, we find the Trial Court properly ruled that Crowder's claim of common-law fraud, as she pleaded in Count V, is time-barred. Pursuant to KRS 413.130(3), common-law fraud actions are subject to a ten-year period of repose, which commences at the time the fraud took place, which again was over 40 years ago. And finally, Count VIII, Crowder's claim of punitive damages, is not an independent cause of action upon which she may prevail if this case proceeded to trial. *See Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky. App. 1980) (holding that without **"**actual compensatory damages, punitive recoveries cannot be sustained").

As a final point, Crowder argues to this Court that "equitable estoppel," or "equitable tolling," renders her amended complaint timely. However, to be clear, statutory tolling, equitable tolling, and equitable estoppel are not interchangeable terms, but are in fact distinct concepts. *See Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020) (clarifying that equitable tolling pauses a limitations period, whereas equitable estoppel precludes "a defendant, because of his own wrongdoing, from using the statute of limitations as a defense").

In addition, we are hesitant to opine on these issues because our review of the record demonstrates that equitable tolling and equitable estoppel are unpreserved issues that Crowder improperly raised on appeal. First, Crowder's response to Yussman's motion for summary judgment at the Trial Court level did

not raise *any* arguments regarding the applicable statutes of limitations, including equitable claims. Further, the Trial Court did not rule on these issues at *any* point during the underlying proceedings. Thus, there is no ruling on equitable tolling or equitable estoppel for this Court to review.

More concerning is Appellant's erroneous preservation statement, where she refers this Court to page 272 of the Trial Court record. *See* Brief for Appellant, p. 17, n.30.[3] Yet, page 272 of the Trial Court record is merely the first page of Crowder's response to Yussman's motion for summary judgment. Again, our review of the record reveals that Crowder did not combat Yussman's limitations arguments, including asserting that any estoppel or tolling principle applied. Consequently, Crowder's preservation statement and record citation is a direct violation of RAP 32(A)(4). This Court has stressed that, "[i]t is not the job of the appellate courts to scour the record in support of an appellant or cross-appellant's argument." *Dennis v. Fulkerson*, 343 S.W.3d 633, 637 (Ky. App. 2011) (citing *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006)). Consequently, it would be "well within our discretion" to impose severe sanctions for Crowder's

---

[3] During oral arguments, the Court questioned Crowder's counsel regarding the accuracy of her preservation statement. Crowder's counsel responded that she believed she preserved the issues of tolling or equitable estoppel but was admittedly unsure. Yussman's counsel was equally unaware of this procedural flaw.

repeated RAP violations.  *See Cotton v. Nat'l Collegiate Athletic Ass'n*, 587 S.W.3d 356, 360 (Ky. App. 2019).

In light of Crowder's submission of invented citations as discussed herein, in conjunction with the instant inaccuracy presented in her preservation statement, we are inclined to impose an additional sanction due to her violating RAP 32(A)(4).  Accordingly, this Court will choose not to address Crowder's arguments concerning equitable remedies available to combat a statute of limitations defense.  We should note that our "sanction" is likely without actual consequence.  This decision is deliberate as to avoid punishing Crowder for her counsel's conduct.

This Court, utilizing *de novo* review, already applied the discovery rule to the applicable limitation periods, providing a discovery date of 2019 to Counts II, IV, VI, and VII.  Considering the repose period for common-law fraud, equitable tolling[4] would only benefit Crowder in relation to Count III, breach of contract, in which the discovery rule does not apply.  Even so, discovery is closed, and Crowder has been unable to locate the contract upon which her claim is based.[5]

---

[4] Equitable estoppel, on the other hand, may have proven to be Crowder's strongest argument against summary judgment.  It is a distinct and separate remedy from equitable tolling.  But she did not raise it below; and thus, we cannot address it on appeal.

[5] Crowder relies on *White v. Baptist Healthcare System, Inc.*, No. 2023-CA-0148-MR, 2024 WL 1813237 (Ky. App. Apr. 26, 2024) (unpublished), to support application of estoppel or tolling to her breach of contract claim.  However, *White* is not persuasive authority in the context of the appeal before this Court.  *White* is not only distinguishable due to its procedural posture

*See Mills v. McGaffee,* 254 S.W.2d 716 (Ky. 1953) (stating that a plaintiff must prove the terms of a written contract where required).

In sum, this Court affirms the Trial Court's ruling that Crowder's common-law causes of action are time-barred.

## **<u>CONCLUSION</u>**

For these reasons set forth herein, we affirm the Jefferson Circuit Court's Order granting summary judgment on all claims.

ALL CONCUR.

BRIEF FOR APPELLANT SUSAN CROWDER:

Amy R. Wheatley
New Albany, Indiana

ORAL ARGUMENT FOR
APPELLANT:

Amy R. Wheatly
New Albany, Indiana

BRIEF FOR APPELLEE MARVIN YUSSMAN, M.D.:

W. Kennedy Simpson
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

W. Kennedy Simpson
Louisville, Kentucky

---

(discovery had not commenced at the time the Trial Court awarded summary judgment), but the opinion is unpublished and the Supreme Court accepted discretionary review. The appellate parties resolved the matter and jointly dismissed the appeal prior to the Kentucky Supreme Court's decision on the merits.